Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 This case comes before us on a writ of error to the Supreme Court of Iowa, The suit originated in a writ of right issued by the District Court of Lee County, at the instance of the heirs of T. F. Reddick, to recover possession of certain lands wrongfully withheld from them, as they alleged, by the defendants, Marsh and others. The venue was 'subsequently changed to the county of Henry, where the cause was tried in September, 1843. The plaintiffs claimed possession, as owners, under a patent to their ancestor, signed by the President and issued from the General Land Office on the 7th of February, 1839, which they exhibited, and also proved the premises in question to be covered by such patent, and in possession of defendants.
 

 The defendants produced in evidence, — 1st. An act passed by Congress on the 1st of July, 1836, relinquishing to the heirs of T. F. Reddick the right and interest of the United States in six Hundred and forty acres, being the land in controversy; which act contained the following provisos: — “Provided, nevertheless, if said lands shall be taken by any older or better claim, emanating from the United States, the government will not be in any wise responsible for any remuneration to. said heirs : and provided, also, that should said .tract of land be included in any reservation heretofore made under treaty with any Indian tribe, the said heirs be, and they hereby are, authorized to locate the same quantity, in legal subdivisions, on any unappropriated lands in said territory subject to entry at private sale.” 2d. The treaty of August .4, 1824, between the United States and the Sac and Fox Indians, and a plat showing the
 
 *232
 
 premises in question to be within the limits of a tract reserved by said treaty for the half-breeds belonging to the Sac and Fox nations. 3d. The act of June 30, 1834, relinquishing the reversionary or contingent interest of the United States in the reservation above mentioned to the. half-breeds, and authorizing them to sell and convey the same. The defendants then requested the court to give to the jury several instructions ; the first, fifth, and seventh of which were as follows: —
 

 “ 1st. That if the jury believe from the evidence, that the land described in the patent lies within the. reservation for the Sac and Fox half-breeds, then the plaintiffs are not entitled to recover under said patent, as authorized by the act of 1st June, 1836.”
 

 The fifth is to the same effect as the first.
 

 “7th. That the plaintiffs cannot recover in this action, unless they show conclusively that the land in controversy is not within the Sac and Fox half-breed reservation.”
 

 The court refused to charge the jury upon the above-mentioned points as requested, and a verdict was rendered for the plaintiffs; whereupon the case wqs carried by the defendants to the Supreme Court of Iowa, where the judgment of the District Court was affirmed.
 

 From the foregoing statement it appears that, by refusing to give the first, fifth, and seventh instructions, the court below decided that the patent obtained from the United States by Reddick’s heirs was a better title than the reservation to the Sac and Fox half-breeds.
 

 The patent of 1839,
 
 was, prima facie,
 
 a conclusive title; but by the treaty of 1824, with the Sac and Fox Indians, the land in dispute was admitted by the United States to lie within the .territory ceded by the treaty; and the Indian title, such as it was before the treaty, is reserved to the half-breeds. This Indian title consisted of the usufruct and right of occupancy and enjoyment; and, so long as it continued, was superior to and excluded those claiming the reserved lands by patents made subsequent to'.the ratification of the treaty; they could not disturb the occupants under the Indian title. That an action of ejectment could be maintained on an Indian right to occupancy and use, is not open to question. This is the result of the decision in Johnson
 
 v.
 
 McIntosh, 8 Wheat. 574. and was the question directly decided, in
 
 the
 
 case
 
 of Cornet v.
 
 Winton, 2 Yerger’s Ten. Rep. 143, on the effect of reserves to individual Indians of a mile square each, secured to heads of families by the Cherokee treaties of 1817 and 1819. Here, however, in addition to the reserved Indian right, the act of 1834 vests the ulti
 
 *233
 
 mate title remaining to the ■ United States in the half-breeds of the Sac and Fox tribes ; thereby giving them a perfect fee-simple, And this act of 1834, being older than the patent, must prevail, unless the plaintiffs below can go behind their patent; and on this assumption the controversy has been made to turn. No evidence of title was introduced in the District Court other than the patent itself; and its recitals are relied on to overreach the half-breed title. In the argument here, reports found in Congressional documents, and laws passed by Congress operating on such reports and documents, have been adduced and insisted on as confirming Reddick’s claim, long before the treaty of 1824 was made. The patent recites that Reddick (assignee of *Robidoux, who was assignee of Tesson) had deposited in the General Land Office a certificate (No. 1157) of the recorder of land titles at St. Louis, Missouri; and that, in pursuance of the several acts of Congress for the adjustment of titles and claims to land, said Reddick has been confirmed in his claim to a tract of land containing six hundred and forty acres, &c..
 

 For the purpose of showing the consideration on which the patent is founded, and the authority by which it issued, the recitals are indisputable on a trial at law; but standing alone, they do not furnish sufficient evidence to establish that the title can take an earlier date than the patent, and thereby overreach an elder title, as that of the half-breeds. As another trial will probably bring out a different case from the one now presented to us, we refrain from making any further remarks on the extraneous matters adduced on the argument.
 

 Nor can the act of 1836, in favor of Reddick’s heirs, help the patent, it being of later date than the treaty; and the confirming act to the half-breeds is, of course, (when standing alone,) inferior to the Indian title.
 

 It was also insisted on the argument here, that, as it did not appear that any half-breeds, or their heirs or assigns, were in existence when the trial below took place, the outstanding title relied on could not be set up by the defendants. To which it may be answered, that it was necessary for the plaintiffs to show themselves to be owuérs of the land, and to recover on the strength of their own title ; and if. the lánd had been previously granted, nothing was left to pass by the second patent, unless there had been an escheat; or forfeiture of title to the United States, by the first grantees ; and certainly a court of justice could presume neither of these things to have taken place between 1834 and 1839, such being the respective dates of the confirming act to the half-breeds, and the patent of Reddick’s heirs. The general rule is, that, where the same land has been
 
 *234
 
 twice granted, the elder patent may be set. up in defence by a trespasser, when sued by a claimant under the younger grant, without inquiring as to who is the actual owner of the land at the time of the trial.
 

 It is therefore ordered, that the judgment be reversed, and the cause remanded for another trial to be had therein.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Supreme Court of the Territory of Iowa, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded for further proceedings to be had therein in conformity to the opinion of this court.