## UNITED STATES *v.* REYNOLDS.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 591.   Argued March 4, 5, 1919.—Decided May 19, 1919.

Under the Allotment Act of February 8, 1887, § 5, c. 119, 24 Stat. 388, the twenty-five year trust period, with the attendant restriction upon the right of alienation, runs from the date of the trust patent, and not from the date of the approval of the allotment by the Secretary of the Interior; and an attempt to convey, made by an heir of the allottee, within that period as extended by the President before its expiration, is void. P. 107.

252 Fed. Rep. 65, reversed.

THE case is stated in the opinion.

*The Solicitor General* for the United States.

*Mr. Mark Goode,* with whom *Mr. Hal Johnson* and *Mr. Jesse D. Lydick* were on the brief, for respondent, argued, in part, as follows:

It is true that the provisional or trust patent did not actually issue until February 6, 1892, or perhaps more correctly speaking it was dated as of that date, but it is likewise true that Stella Washington's right to a preliminary patent vested on the instant her allotment was approved. Her equitable title was then complete and did not depend upon the delivery of the trust patent. *Ballinger* v. *Frost,* 216 U. S. 240.

By the very terms of the approval the patent was ordered issued positively and unequivocally. No reservation was made and no discretion was vested in any one after that, and the duty to issue thereupon became purely ministerial. Delay in issuing, or failure to issue such patent thereafter could not postpone or defeat the vesting of the equitable interest, nor could it postpone the beginning of the trust period. Not only did the approval of the Secretary contain an absolute order for the issue; but the act itself is mandatory. It reads: "That upon the approval of the allotments provided for in this act by the Secretary of the Interior, *he shall cause* patents to issue therefor in the name of the allottees," etc. No discretion is lodged anywhere with regard to issuance of the trust patents.

It therefore follows that the trust began to run with the approval. However, it makes no difference whether we say the trust was created by the patent, for it would relate back to the approval; but we hardly think it can be said that the trust is created by the patent for it might well be that the issue of a patent in a given case could be

overlooked for years, and this has actually occurred, and could it then be said that no trust was created because someone forgot to write out and record the patent?

Stella Washington obtained a vested interest in the land when her allotment was approved on September 16, 1891, and by operation of law the right to convey passed to her heirs on September 16, 1916. *Ballinger* v. *Frost*, 216 U. S. 240; *Simmons* v. *Wagner*, 101 U. S. 260; *Wood* v. *Gleason*, 43 Oklahoma, 9; *Godfrey* v. *Iowa Land & Trust Co.*, 21 Oklahoma, 293.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was a suit brought by the United States in behalf of Claudius Tyner and ten other persons, heirs at law of Stella Washington, deceased, who was a member of the Absentee Shawnee Tribe of Indians of Oklahoma; its object being to cancel a deed made by Tyner to Suda Reynolds on February 17, 1917, purporting to convey an undivided eleventh interest in a tract of land inherited by the eleven heirs from Stella Washington, who was the allottee thereof. The legal title to the tract was held by the United States under a certificate of allotment or "trust patent," dated February 6, 1892, containing a provision that the United States did and would hold the land in question in trust for the said Stella and in case of her death for her heirs, for a period of twenty-five years, at the expiration of which time the United States would convey the same by patent in fee, discharged of the trust, to said Indian or her heirs, unless the trust period had been extended by the President of the United States.

The allotment was made under the provisions of the Act of Congress approved February 8, 1887, c. 119, 24 Stat. 388, as amended by Act of March 3, 1891, c. 543,

26 Stat. 989, 1019. Section 5 of the Act of 1887 provided: "That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided,* That the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

Stella Washington's allotment was approved by the Secretary September 16, 1891; the allotment certificate or trust patent was issued on February 6, 1892. On November 24, 1916, the President by executive order extended the trust period for ten years. Thereafter, on February 17, 1917, Tyner executed the deed in question to Suda Reynolds.

The first question presented by the record is whether the original trust period extended for twenty-five years from February 6, 1892, the date of the trust patent, or from September 16, 1891, the date of the approval of the allotment. If the former, there is no question that the executive order, being made within the original trust period, was valid (subject to an objection as to its form), and had the effect of extending the trust, with resulting

restriction upon the right of alienation, for the further period of ten years. If, on the other hand, the original trust period should be dated from the approval of the allotment, it still is insisted by the Government that the right of the President to extend the trust period continued beyond the twenty-five years and until the United States surrendered its trust by conveying the absolute fee simple title to the Indian allottee or his heirs.

The District Court sustained the contention of the United States and entered a decree canceling Tyner's deed as void and constituting a cloud upon its title. The Circuit Court of Appeals reversed this decree and directed a dismissal of the bill. 252 Fed. Rep. 65.

The latter decision rests upon the ground that under § 5 of the allotment act the right of the allottee to a preliminary or trust patent became absolute upon the approval of the allotment by the Secretary of the Interior; that her equitable title was then complete, and did not depend upon the delivery of the patent. *Ballinger* v. *Frost*, 216 U. S. 240, was cited in support of this; but it is not entirely apposite. That case turned upon the effect of a certificate of allotment issued under the Choctaw and Chickasaw Agreement (Act of July 1, 1902, c. 1362, 32 Stat. 641, 644), the 23d section of which declared that such certificate should be "conclusive evidence of the right of any allottee to the tract of land described therein." The Indian, being a citizen and resident of the Choctaw Nation duly enrolled and entitled to an allottment, selected as such the land in controversy, upon which were her buildings and improvements; this was received by the Commission to the Five Civilized Tribes, and, after the expiration of nine months, the time prescribed by statute for contest, no contest of her right to the designated allotment having been made, a certificate was issued and delivered to her. This court held the allottee's rights had become fixed, the Secretary of the In-

terior thereafter having nothing but the ministerial duty to perform of seeing that a patent was duly executed and delivered, and upon this ground sustained a judgment awarding a writ of mandamus; citing *Barney* v. *Dolph,* 97 U. S. 652, 656; *Simmons* v. *Wagner,* 101 U. S. 260, 261; *Cornelius* v. *Kessel,* 128 U. S. 456, 461; *Orchard* v. *Alexander,* 157 U. S. 372, 383; and other cases.

The rule established by these cases is familiar. But we do not think it can be applied so as to give finality to the act of the Secretary in approving the allotment under § 5 of the Act of 1887. Nor does that act contain any such declaration of conclusive effect as is found in § 23 of the Choctaw-Chickasaw Agreement. While the matter is not free from doubt, we have reached the conclusion that by the better construction the trust period begins and dates from the issuance of the trust patent and not from the approval of the allotment. The Department distinctly so ruled in *Klamath Allotments,* 38 L. D. 559, 561, where it was said, after quoting the pertinent language of § 5 of the Act of 1887: "Clearly no trust is declared until actual issuance of patent, and the use of a word of the present tense, 'does,' shows that the trust period begins to run only upon such issuance." This ruling was made in the year 1910, and may be inconsistent with some previous rulings of the Department, as counsel for respondent insists that it is. Nevertheless it is entitled to weight as an administrative interpretation of the act; it comports with our impression of the natural meaning of the language employed by Congress; and it very probably was relied upon by the President when promulgating the order of November 24, 1916, extending the trust period. This order might as well have been made a few months earlier, had it been supposed that the 25-year period was to expire in September.

This construction of the Act of 1887 puts it in agree-

ment with other acts for the allotment of Indian lands,[1] which, while subsequently passed and perhaps not strictly to be regarded as a legislative interpretation, nevertheless seem to us to indicate the effect that Congress attributed to the Act of 1887.

Some criticism is made by counsel for respondent upon the form of the executive order of November 24, 1916, as being indefinite and not in accordance with the act of Congress. We deem this criticism unfounded, and need spend no time upon it.

Calculating the 25-year period from February 6, 1892, the date of trust patent for the Stella Washington allotment, it expired on February 5, 1917; but the trust was extended for a further term of ten years, and hence the deed made by Claudius Tyner to Suda Reynolds February

---

[1] Act of March 2, 1889, c. 422, 25 Stat. 1013, 1014, providing for allotments to Peorias and Miamis, contains this provision: "The land so allotted shall not be subject to alienation for twenty-five years from the date of the issuance of patent therefor."

Act of March 2, 1895, c. 188, 28 Stat. 876, 907, (the Quapaw Act) contains this: "*Provided*, That said allotments shall be inalienable for a period of twenty-five years from and after the date of said patents."

Act of July 1, 1902, c. 1362, 32 Stat. 641, 642, (Choctaw-Chickasaw Act) contains the following:

(Sec. 12, relating to homesteads.) "Shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment."

(Sec. 13.) "The allotment of each Choctaw and Chickasaw freedman, shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment."

(Sec. 16.) "All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years; in each case from date of patent."

Cherokee Allotment Act of July 1, 1902, c. 1375, 32 Stat. 716, contains similar language in §§ 13 and 15.

17, 1917, was null and void by the terms of § 5 of the Act of 1887.

As the President's order was made within the original 25-year period, it is unnecessary to consider whether he might have acted with like effect at a later time.

> *The decree of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.*