## ST. MARIE et al. v. UNITED STATES et al.

### No. 918-Y.

District Court, S. D. California, Central Division.

July 23, 1938.

238

Thomas L. Sloan, of Palm Springs, Cal., and G. M. Gannon, of Los Angeles, Cal. (Daniels, Sokolow & Swope, of Los Angeles, Cal., of counsel), for plaintiffs.

Ben Harrison, U. S. Atty., and Carl Eardley, Asst. U. S. Atty., both of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

The members of the Agua Caliente or Palm Springs band of Mission Indians of California have resided since 1897 upon the Agua Caliente or Palm Springs Indian Reservation set aside for their occupancy and use by executive and congressional decree, pursuant to an Act of the Congress entitled "An act for the relief of the Mission Indians in the State of California", enacted January 12, 1891 (26 Stat. 712). This Act, after providing for the appointment of a commissioner to arrange the settling of Mission Indians residing in California upon reservations, provides, in Sections 4 and 5:

"Sec. 4. That whenever any of the Indians residing upon any reservation patented under the provisions of this act shall, *in the opinion of the Secretary of the Interior,* be so advanced in civilization as to be capable of owning and managing land in severalty, the Secretary of the Interior may cause allotments to be made to such Indians, out of the land of such reservation, in quantity as follows: To each head of a family not more than six hundred and forty acres nor less than one hundred and sixty acres of pasture or grazing land, and in addition thereto not exceeding twenty acres, as he shall deem for the best interest of the allottee, of arable land in some suitable locality; to each single person over twenty-one years of age not less than eighty nor more than six hundred and forty acres of pasture or grazing land and not exceeding ten acres of such arable land.

"Sec. 5. That *upon the approval of the allotments provided for in the preceding sec-*

*tion by the Secretary of the Interior he shall cause patents to issue therefor in the name of the allottees,* which shall be of the legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State of California, and that at the expiration of said period the United States will convey the same by patent to the said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void.

"Provided, That these patents, when issued, shall override the patent authorized to be issued to the band or village as aforesaid, and shall separate the individual allotment from the lands held in common, which proviso shall be incorporated in each of the village patents." 26 Stat. 713. [Italics added.]

Section 3 of the Act was amended by the Act of March 2, 1917 (39 Stat. 976), to read as follows: "That section three of the Act of January twelfth, eighteen hundred and ninety-one (twenty-sixth Statutes at Large, page seven hundred and twelve), entitled 'An Act for the relief of Mission Indians in the State of California,' be, and the same is hereby, amended so as to authorize the President, in his discretion and whenever he shall deem it for the interests of the Indians affected thereby, to extend the trust period for such time as may be advisable on the lands held in trust for the use and benefit of the Mission Bands or villages of Indians in California: Provided, That the Secretary of the Interior be, and he is hereby, authorized and directed to cause allotments to be made to the Indians belonging to and having tribal rights on the Mission Indian reservations in the State of California, in areas as provided in section seventeen [Sec. 17] of the Act of June twenty-fifth, nineteen hundred and ten (thirty-sixth Statutes at Large, page eight hundred and fifty-nine), instead of as provided in section four of the Act of January twelfth, eighteen hundred and ninety-one, (Twenty-sixth Statutes at Large, page seven hundred and thirteen) : Provided, That this act shall not affect any allotments heretofore patented to these Indians."

In 1921, the Secretary of the Interior appointed H. E. Wadsworth as general allotting agent and authorized him to prepare allotment schedules for the various Indian bands in Southern California. In 1923, Wadsworth appeared on the Palm Springs reservation and made certain selections on behalf of all enrolled members of the band. He returned in 1927 and made selections for all Indians desiring allotments,—approximately one half of the tribe. To each selector Wadsworth gave a selection certificate which was identical in wording with that issued to the plaintiff here, which read:

"Selection for Allotment

"On Palm Springs Indian Reservation, 1927

"This is to certify that Genevieve Pierce St. Marie has selected the S½ NE¼ SE¼ SE¼ Sec. 22; NW¼ NE¼ of Section 22 Township No. 4 South, Range No. 4 East, of the San. Ber. M., containing 45 acres, more or less, according to Government survey. Stake No.———

*"Not valid unless approved by the Secretary of the Interior.*

"H. E. Wadsworth

"U. S. Special Allotting Agent."
(Italics added.)

The selections *were never approved by the Secretary* and *no actual allotment* was ever made.

The plaintiff and others similarly situated have instituted actions for the purpose of compelling the United States to recognize the selection of lands as an allotment and to compel issuance to them of a trust allotment patent which, under the terms of the Act, would ripen into complete ownership in the allottee at the end of a twenty-five year period and entitle him to a conveyance by patent in fee, discharged of the trust.

The cases were tried together and the facts, in the main, are undisputed. We are to determine whether the plaintiffs acquired vested rights, the recognition of which we can compel. 25 U.S.CA. § 345.

Title to Indian tribal lands, whether occupied by Indians under treaties between the United States and a particular Indian nation, or under acts of settlement on reservations, is, except where a special treaty or law gives the fee to the Indian tribes,

vested in the Government of the United States in fee. The Indians have a right to perpetual occupancy and use. See Marsh et al. v. Brooks, 1850, 8 How. 223, 232, 12 L.Ed. 1056; Spalding v. Chandler, 1896, 160 U.S. 394, 402, 403, 16 S.Ct. 360, 40 L. Ed. 469; United States v. Chase, 1917, 245 U.S. 89, 99, 100, 38 S.Ct. 24, 62 L.Ed. 168; United States v. Creek Nation, 1935, 295 U.S. 103, 109, 110, 55 S.Ct. 681, 684, 79 L. Ed. 1331; Shoshone Tribe v. United States, 1937, 299 U.S. 476, 496, 57 S.Ct. 244, 251, 81 L.Ed. 360.

■ If the tribal lands are allotted to individuals, the allottee, upon receipt of a certificate of allotment, acquires an equitable title and the right to exclusive possession of the allotted land, subject, however, to the supervisory power of the Government, or limitation of alienation, during a twenty-five year period. Marsh et al. v. Brooks, supra; Duncan Townsite Co. v. Lane, 1917, 245 U.S. 308, 310, 38 S.Ct. 99, 62 L.Ed. 309; United States v. Bowling et al., 1921, 256 U.S. 484, 487, 41 S.Ct. 561, 562, 65 L.Ed. 1054. The superior title of the Government in tribal lands and in allotted lands where no patents have been issued, implies, of course, wise management. It does not confer on the Government the right to despoil a tribe or an allottee of accrued rights. As Mr. Justice Cardozo said so eloquently, in Shoshone Tribe v. United States, supra, at page 498, 57 S.Ct. at page 252: ."Spoliation is not management." But the paternalistic position of the Government also imposes an obligation to protect the tribe or individual Indians against spoliation by others than the Government,— even spoliation by fellow tribesmen. These general considerations should aid in determining what, if any, rights the tribesmen acquired through these selections for allotment. On their face, the certificates contained the legend: *"Not valid unless approved by the Secretary of the Interior."* Such approval was never given. That it was necessary is evident from the language of the Act of 1891. The Act, in Section 4, provides that the Secretary of Interior may cause allotments to be made to Indians residing upon the designated reservation, whenever "in the opinion of the Secretary of the Interior [any of the Indians] be so advanced in civilization as to be capable of owning and managing land in severalty." The allotments when made must, under Section 5 of the Act, be approved by the Secretary. The section provides that upon such approval, "he *shall* cause patents to issue therefor" which *shall* have certain legal effect. It is evident that this procedure contemplates the following acts on the part of the Secretary:

(1) A determination that, in his opinion, the Indians have reached the degree of civilization spoken of in the Act.

(2) An order setting up the mechanics for selection.

(3) Actual allotments approved by the Secretary.

■ These acts are all *optional* involving the exercise not of ministerial but of executive and almost quasi-judicial discretion and judgment. Lemieux v. United States, 8 Cir., 1926, 15 F.2d 518, 521; United States v. Reynolds, 1919, 250 U.S. 104, 39 S.Ct. 409, 63 L.Ed. 873. And the act so declares them by using the optative word "may". It is only after the third stage is passed *(the approval of the allotment by the Secretary)* that further action on the part of the Secretary becomes mandatory, and the mandatory word "must" appears in the Act. When he has given his approval, the statute says "he *shall* cause patents to issue" which shall have certain legal effect.

■ In the present case, we find the first selection by the allotting agent in 1923 and the preparation of a schedule for all the enrolled members of the band. In 1927, the allotting agent made selections for all Indians desiring allotments. No allotment was actually made. The instrument delivered to the individual Indians was entitled "Selection for Allotment". It certified merely that the particular Indian had selected certain designated lots. Even if this be considered a certificate of allotment, by its own terms and by the wording of the statute, *it was not effective* until approved by the Secretary. Of the four essentials to complete an allotment which vests rights, two are absent, (1) a determination by the Secretary that *this particular band* of Indians had reached the degree of civilization to enable them to control their property severally and (2) an approval of each allotment, which implies that the ·particular individual is actually entitled to the benefit of the Act. Even if it be assumed that when the Secretary designated an allotting agent for all the reservations of California, he thereby impliedly determined that the Indians of the Palm Springs reservation were competent to manage their own property, the Secretary never approved the se-

lections made by the agent or the Indians themselves. The reason for such failure does not appear. Nor is it material. Where discretion is imposed upon the Secretary of the Interior, especially in regard to lands, it will not be interfered with by the Courts unless it is exercised in a manner violative of law or vested rights. See De Cambra v. Rogers, 1903, 189 U.S. 119, 23 S.Ct. 519, 47 L.Ed. 734; United States ex rel. West v. Hitchcock, 1907, 205 U.S. 80, 27 S.Ct. 423, 51 L.Ed. 718; Louisiana v. McAdoo, 1914, 234 U.S. 627, 633, 34 S.Ct. 938, 58 L. Ed. 1506; United States v. Standard Oil Co., D.C.Cal., 1937, 20 F.Supp. 427. And a study of the Act under which the selections were made leads to the conclusion that it was not the intention of the Congress to make the act of selection the source of a vested right, of which the Indian could not be deprived by the failure of the Secretary to approve it. The cases in which the act of selection called for compulsory action, were under acts in which the Congress had directed certain things be done, or in which certificates of allotment were given the effect of muniments of title. For illustration, compare Garfield v. United States ex rel. Goldsby, 1908, 211 U.S. 249, 29 S.Ct. 62, 53 L.Ed. 168; Hy-Yu-Tse-Mil-Kin v. Smith, 1904, 194 U.S. 401, 24 S.Ct. 676, 48 L.Ed. 1039; Leecy v. United States, 8 Cir., 1911, 190 F. 289; United States v. Payne, 1924, 264 U.S. 446, 44 S.Ct. 352, 68 L.Ed. 782.

[redacted] However, where, as here, discretion is lodged in the Secretary and the selector is not entitled to a patent until certain conditions precedent, dependent upon the action of the Secretary, are complied with, he cannot assert any rights until he has shown compliance with them. La Roque v. United States, 1915, 239 U.S. 62, 36 S.Ct. 22, 60 L.Ed. 147; Mitchell v. United States, 9 Cir., 1927, 22 F.2d 771. Even departmental regulations making consent of the Secretary necessary to the exercise of certain rights under allotment statutes have been sustained. Mitchell v. United States, supra; Sunderland v. United States, 1924, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259.

The conclusion just stated is sustained by Lemieux v. United States, supra. There the Court had under consideration the Act of February 8, 1887 (24 Stat. 388) requiring allotments to the Fond du Lac band of Indians to be approved by the Secretary. A certificate of selection was issued to Peter Lemieux. It was never approved or disapproved by the Secretary and no patent was issued to him. The Court held that Lemieux acquired no right under the certificate issued by the allotting agent, saying (page 521): "The facts show that the selection of these lands by Lemieux as his allotment *was not reported to the Secretary of the Interior, as provided by the act, and that the lands were never set apart for him.* The trial court took the position that there was * * * not only presented to the Secretary *the question as to whether,* * * * *with respect to the Fond du Lac reservation, he was 'an Indian located thereon,'* and [but] whether he was 'ready, competent, and qualified' to receive an allotment. *We also take this view of the matter.*" (Italics added.)

[redacted] So here the Palm Springs Indians having acquired no vested right, and the power of the Secretary to withhold approval being discretionary, we cannot compel action that would give to the Indians the benefit of a right which they did not possess. We cannot compel action that would distribute the choicest part of tribal lands to a few individuals and would result in the spoliation of the others. Nor does the amendment of 1917 of the Mission Indians Act compel such action. It did not affect the conditions prescribed in Sections 4 and 5 of the Act. It related to Section 3 by providing selections from certain designated areas. The history of its enactment, as given by the plaintiffs themselves, shows that it did not aim to change a discretionary power into a mandate. The acreage called for in the Act of 1891 exceeded the amount available and the amendment sought to remedy this. The plaintiffs concede this to have been the purpose. They say in their brief: "These provisions of the law could not be met. There was not land enough on any of the reservations of California to meet the requirements. The amendment of March 2, 1917, *provided that the allotments be made in areas as provided in section 17 of the Act of June 10, 1925, (36 Stat. 859).* This statute enabled the allotting authorities to adjust and classify the lands according to the quantity of land available for all purposes." (Italics added.)

[redacted] Yet, because of the mandatory character of the words of the amendment, they would have us hold that it repealed Sections 4 and 5 of the Act. No such legislative intention appears. And repeals by implication are not favored. Chew Heong v. Unit-

ed States, 1884, 112 U.S. 536, 549, 550, 5 S.Ct. 255, 28 L.Ed. 770; Posadas v. National City Bank, 1936, 296 U.S. 497, 56 S.Ct. .349, 80 L.Ed. 351; United States v. Burroughs, 1933, 289 U.S. 159, 53 S.Ct. 574, 77 L.Ed. 1096. We are bidden to construe a later statute in a manner consistent with the earlier one unless a clear repugnancy between the two appears. No such repugnancy appears here. The legislative history of the act shows that it aimed to supplement it and make it workable by changing the area of selection. The duty of the Secretary *to choose from the area* was made mandatory. But the allotments to be made from the area still needed the Secretary's approval and *were still to be made in accordance with the provisions of the old law.* These provisions were not complied with.

Nor are the plaintiffs aided by the provisions of the Act of February 6, 1901 (31 Stat. 760, Ch. 217, 25 U.S.C.A. § 345), which gives allottees the right to prosecute an action in the District Courts of the United States when they have been "unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress." This statute is jurisdictional. Hy-Yu-Tse-Mil-Kin v. Smith, 9 Cir., 1902, 119 F. 114. It cannot confer rights where none exist. It is only when the right of the allottee has become vested that courts may compel action. Leecy v. United States, 8 Cir., 1911, 190 F. 289. And, see, First Moon v. White Tail, 1926, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565.

I am, therefore, of opinion that none of the Indian selectors, who brought these suits, is entitled to the relief asked.

Denial of relief involves no injustice to any of them. They are charged with the knowledge of the conditions under which the lands could be allotted. The selection certificate carried actual notice to each of them that the selection would not mature into an allotment unless approved by the Secretary. If the failure to recognize individual titles in certain members of the tribe results in an individual detriment, the tribe, as a whole, benefits. The lands remain tribal and, ultimately, even the individual claimants may benefit by continued communal control.

Judgment will be for the Government that the plaintiffs take nothing in any of the cases by their Bills of Complaint. Findings will be for the Government on the disputed facts affecting certain individual claimants.

Findings and judgment to be presented by the Government under Rule 44.

Exception to the plaintiff in each case.