## HATCHITT v. UNITED STATES
(two cases).
### No. 11205.

Circuit Court of Appeals, Ninth Circuit.
Dec. 12, 1946.

John W. Preston, Oliver O. Clark, David D. Sallee and Robert A. Smith, all of Los Angeles, Cal., for appellants, Hatchitt.

David L. Bazelon, Asst. Atty. Gen., Roger P. Marquis and Dwight D. Doty, Attys., Dept. of Justice, all of Washington, D. C., and Eugene D. Williams, Sp. Asst. to the Atty. Gen., for appellee.

Before GARRECHT, MATHEWS and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Consolidated by stipulation of the parties, these two appeals present the sole question of whether or not a defense of res judicata shall apply.

Each of the appellants is a duly enrolled and recognized member of the Palm Springs or Agua Caliente Band of Mission Indians of California. In each of the above entitled actions the respective plaintiff sought a judgment decreeing that on June 21, 1923, the United States of America allotted certain lands to her, and that she is entitled to an allotment trust patent to such lands.

In the third defense contained in its answer, the appellee pleaded, as a bar to the appellants' respective actions, the judgments of the United States District Court for the Southern District of California, Central Division, in the cases of Viola Juanita Hatchitt v. United States of America, No. 1209-Y Eq., and Juana Saturnino Hatchitt, No. 1208-Y Eq., which were consolidated with an action of similar nature entitled Genevieve P. St. Marie v. United States of America, No. 918-Y Eq. These cases were decided adversely to the appellants and the other plaintiffs. See St.

Marie v. United States, D. C., 24 F.Supp. 237, affirmed 9 Cir., 108 F.2d 876, certiorari denied for the reason that application therefor was not made within the time provided by law, 311 U.S. 652, 61 S.Ct. 35, 85 L.Ed. 417.

The appellee pleaded in the above-mentioned third defense that the judgments in the St. Marie and consolidated cases, including those involving the claims of the appellants, were final, binding and conclusive upon the parties to the present actions, and were res judicata as to all matters alleged in the present complaints. The court below granted the appellee's motions for summary judgments of dismissal, from which judgments the present appeals were taken.

In the earlier actions, which for convenience will be referred to as the St. Marie cases, the same parties and the same lands, among others, were involved as in the instant cases. And in each set of cases, the plaintiffs based their respective claims upon schedules and certificates of selections for allotment issued by the same special allotting officer of the Office of Indian Affairs, Harry E. Wadsworth.

The appellants summarize their position in the present actions as follows: "A suit to declare the right to an allotment of land under one set of proceedings, and a suit to declare the right to an allotment under a different set of proceedings and regulations do not necessarily create the same estate or cause of action."

The facts in this case are fully set forth in the St. Marie cases, supra; in Arenas v. United States, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363; in Arenas v. United States, D.C., 60 F.Supp. 411; and, finally, in United States v. Arenas, D.C., 158 F.2d 730, decided by this court on this day.

It would serve no useful purpose, therefore, to restate the facts once again. It will suffice to point out here that the claims of the plaintiffs, including the present appellants, in the St. Marie cases were based upon certificates of selections for allotment and a schedule prepared by Wadsworth in 1927. The claims in the instant actions are bottomed upon certificates issued and a schedule compiled by Wadsworth in 1923, purporting to allot identically the same lands to the appellants herein as were set aside for them in 1927.

It is well settled that a valid and final judgment may be successfully pleaded in bar against any subsequent action between the same parties dealing with the same right as to the same res. That the muniment of right in each case is different does not militate against the application of the rule, so long as the general type of right in the identical res is the same. In the instant case, the appellants are asserting the same type of right—namely, the right as allotees of Indian land—to the identical tracts claimed by them in the St. Marie cases, although their claims in the present actions are grounded upon different certificates and schedules from those invoked by them in the earlier litigation.

In the leading case of Northern Pacific R. v. Slaght, 205 U.S. 122, 130–132, 133, 27 S.Ct. 442, 445, 51 L.Ed. 738, the court said:

"The question as to such judgment when pleaded in bar of another action will be necessarily its legal identity with such action. The general rule of the extent of the bar is not only what was pleaded or litigated, but what could have been pleaded or litigated. There is a difference between the effect of a judgment as a bar against the prosecution of a second action for the same claim or demand, and its effect as an estoppel in another action between the same parties upon another claim or demand [cases cited], and a distinction between personal actions and real actions is useful to observe. Herman, Estoppel, § 92. It is there said: 'Although there may be several different claims for the same thing, there can be only one right of property in it; therefore, when a cause of action has resulted in favor of the defendant, when the plaintiff claims the property of a certain thing there can be no other action maintained against the same party for the same property, for that would be to renew the question already decided; for the single question in litigation was whether the property belonged to the plaintiff or not; *and it is of no importance that the plaintiff failed to set up all his rights upon which*

*his cause of action could have been maintained; it is sufficient that it might have been litigated.'*

"In United States v. California & Oregon Land Co., 192 U.S. 355, 24 S.Ct. 266, 48 L.Ed. 476, this principle was applied. In that case a decree rendered upon a bill in equity brought under an act of Congress to have patents for land declared void, as forfeited, and to establish the title of the United States to the land, was held to be a bar to a subsequent bill brought against the same defendants to recover the same land, on the ground that it was excepted from the original grant as an Indian reservation. And, speaking of the two suits, we said, by Mr. Justice Holmes: 'The best that can be said, apart from the act just quoted, to distinguish the two suits, is that now the United States puts forward a new ground for its prayer. Formerly it sought to avoid the patents by way of forfeiture. Now it seeks the same conclusion by a different means; that is to say, by evidence that the lands originally were excepted from the grant. But in this, as in the former suit, it seeks to establish its own title to the fee.' And further: 'But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim [cases cited]; and, a fortiori, he cannot divide the grounds of recovery.'

\*   \*   \*   \*   \*   \*

"In other words, plaintiff in error, as successor of the Spokane & Palouse Railway Company, *again asserts title to the very property that was the subject of the other suit, the source of title, only, being different. If this may be done, how often may it be repeated? If defeated upon the new title, may plaintiff in error assert still another one, either in its predecessor or in itself, and repeat as often as it may vary its claim? The principle of res judicata and the cases enforcing| and illustrating that principle declare otherwise.*" [Emphasis supplied.]

See also Werlein v. New Orleans, 177 U.S. 390, 399-400, 20 S.Ct. 682, 44 L.Ed. 817; Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 319-320, 47 S.Ct. 600, 71 L.Ed.

1069; MacDonnell v. Capital Co., 9 Cir., 130 F.2d 311, 317-318, certiorari denied, 317 U.S. 692, 63 S.Ct. 324, 87 L.Ed. 554.

The appellants attempt to spell out a vital difference between the St. Marie and the present litigation by pointing out that "an allotment estate beginning in 1927, with a restriction upon alienation thereof until 1952, is not the same estate as an allotment of the same area made in 1923, with a restriction upon alienation terminating in 1948."

The Supreme Court disposed of any contention of this kind in Bienville Water Supply Co. v. Mobile, 186 U.S. 212, 216, 217, 22 S.Ct. 820, 822, 46 L.Ed. 1132, by posing a series of rhetorical questions: "\* \* \* In other words, the plaintiff failed to set up in the first suit all its grounds of relief. Can it be permitted in this to set up additional grounds and obtain the very relief sought in the prior suit as well as additional relief, *the same in kind though longer in duration?* Will the law permit the splitting up into separate suits of different grounds for the same relief? Will not the judgment or decree in the first be held a final adjudication of the rights of the parties?" [Emphasis supplied.]

■ Again, the appellants devote several pages of their briefs to an attempt to show that the decision of this court in the St. Marie cases was erroneous, and in support of their contention quote copiously from the Supreme Court's opinion in the Arenas case, supra. Having filed a lengthy dissenting opinion in the St. Marie cases, the writer of the present opinion naturally agrees that the decision in that litigation was not correct. The soundness of a final judgment, however, has nothing whatever to do with its ability to support a plea of res judicata.

In Reed v. Allen, 286 U.S. 191, 201, 52 S.Ct. 532, 534, 76 L.Ed. 1054, 81 A.L.R. 703, the court said: "These decisions constitute applications of the general and well-settled rule that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong. [Cases cited.] The indulgence of a contrary view would result in creating ele-

ments of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert." See also 30 Am.Jur., Judgments, § 198.

■ The appellants also insist that "The United States is estopped to plead and rely upon res judicata because of the fiduciary relationship existing between it and appellants." They concede, however, that "It is, of course, true that the United States is not to be estopped when acting in the capacity of a sovereign," but they contend that "it is also true that when acting in a proprietary capacity the doctrine of estoppel may be applied to it."

The contention that the United States is acting "in a proprietary capacity" in its dealings with its Indian wards regarding land matters is inconsistent with a statement appearing elsewhere in the appellants' opening brief: "As a fiduciary the United States neither has, nor can have, a pecuniary interest in the lands of the Mission Indians of California."

Be that as it may, the Supreme Court has settled the question. In United States v. Shoshone Indian Tribe, 304 U.S. 111, 118, 58 S.Ct. 794, 798, 82 L.Ed. 1213, the following language was used: " * * * The authority of the United States to prescribe title by which individual Indians may hold tracts selected by them within the reservation, to pass laws regulating alienation and descent and for the government of the tribe and its people upon the reservation detracts nothing from the tribe's ownership, but was reserved for the more convenient discharge of the duties of the United States as guardian and *sovereign*." [Emphasis supplied.] See also 31 C.J.S., Estoppel, § 138a.

Finally, the appellants complain that "It clearly is not the duty of the Government, by the highly technical defense of res judicata, to attempt to defeat the lawful right of the appellants to their allotment trust patents."

■ The appellants misconceive the nature of the doctrine of res judicata when they characterize it as a "highly technical defense." In 30 Am.Jur., Judgments, § 165, it is said: "The doctrine of res judicata may be said to inhere in the legal systems of all civilized nations as an obvious rule of expediency, justice, and public tranquillity. Public policy and the interest of litigants alike require that there be an end to litigation which, without the doctrine of res judicata, would be endless. The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. The doctrine of res judicata not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings."

■ Paraphrasing the language of the following authorities and applying it to the cases at bar, we may say that it is of no importance that in the St. Marie litigation the appellants failed to set up all their rights—namely, those under the 1923 schedule as well as those under the one of 1927—upon which their cause of action could have been maintained. It is sufficient that it might have been litigated.

In other words, the appellants again assert rights to the very property that was the subject of their suits in the St. Marie cases, the source of right only being different. If defeated under the new source of right—the 1923 schedule—may the appellants assert still another one, and repeat as often as they may vary their claims? The principle of res judicata and the cases enforcing and illustrating that principle declare otherwise.

Suppose Wadsworth had prepared other schedules besides those of 1923 and 1927 purporting to allot these lands to the appellants—say at other four-year intervals, or in 1931, 1935, 1939 and 1943. Could the appellants bring actions successively upon each of these schedules? If they are to be allowed two bites at a cherry, they should be allowed six. The reductio ad absurdum becomes evident upon its mere statement.

The fact that the Supreme Court's decision in the Arenas case, supra, leads to the

758

belief that the holding in the St. Marie cases was erroneous, does not detract from the effect of the latter decrees as res judicata.

The appellee is not estopped from urging the bar of res judicata, since in its dealings with Indians with reference to their lands the United States acts not in a proprietary capacity but as a sovereign.

Nor is the defense a highly technical one, for it is based upon considerations of justice and public tranquillity. There should be an end to litigation—even Indian litigation.

Accordingly, the judgments of the court below are affirmed.