**OWENS VALLEY INDIAN HOUSING AUTHORITY, Plaintiff–Appellant,**

v.

**Gifford TURNER, Defendant–Appellee.**

No. 96–16021.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1999.

Decided Aug. 2, 1999.

Arthur J. Maillet, Bishop, California, for the plaintiff-appellant.

No appearance for the defendant-appellee.

Before: FLETCHER and SILVERMAN, Circuit Judges, and STAGG, District Judge.*

FLETCHER, Circuit Judge:

Appellant Owens Valley Indian Housing Authority (OVIHA) appeals from the district court's order dismissing its unlawful detainer suit against Appellee Gifford Turner. OVIHA brought the instant action as part of eviction proceedings against Turner. The district court dismissed the case for lack of subject matter jurisdiction. We affirm.

## I.

OVIHA is a public housing agency specifically, an Indian housing authority as defined by 42 U.S.C. § 1437a(b)(6) & (11). It was created and chartered by four federally recognized Indian tribes—the Bishop, Big Pine, Fort Independence, and Lone Pine Tribes (the Tribes)—with reservation lands in Inyo County, California. The Tribes chartered OVIHA by ordinances conforming with federal regulations found at 24 C.F.R. § 905.101. As provided in the ordinances, OVIHA's purposes include "[a]lleviating the acute shortage of decent, safe and sanitary dwellings for families of low income." OVIHA pursues this purpose by leasing reservation land

from the Tribes, constructing housing units on the land, and sub-leasing the housing units to eligible Indian families.

As a public housing agency, OVIHA receives federal funding from the United States Department of Housing and Urban Development. *See* 42 U.S.C. § 1437c. OVIHA is required by federal law to establish "satisfactory procedures designed to assure the prompt payment and collection of rents and the prompt processing of evictions in the case of non-payment of rent." 42 U.S.C. § 1437d(c)(4)(B). To that end, OVIHA adopted a "Low Rent Tenant Collection Policy." Among other things, the Policy sets forth the procedure for OVIHA to follow when evicting a tenant. It provides that when seeking an eviction, after complying with the "procedures as set forth in this policy for breach of payment or non-payment obligations," OVIHA "shall file a civil complaint with the appropriate Court."

In 1979, OVIHA leased a plot of reservation land from the Bishop Tribe for the purpose of constructing low-rent housing thereon (the Original Lease). The Original Lease described the land as the "tribal assignment" of Gifford Turner, a member of the Bishop Tribe. An additional document signed contemporaneously by Turner and the Bishop Tribe (the Conditional Relinquishment), specified that under the terms of the Original Lease, OVIHA would "construct a house on the site and [Turner would] take possession under an occupancy agreement."

In October, 1988, Turner signed a Low Rent Lease with OVIHA for a housing unit identified as Unit 107 on Bishop Indian Reservation. In July, 1995, OVIHA served Turner with a Notice of Termination of Low Rent Lease, alleging that he had breached the Lease in various ways. Turner did not respond to the Termination Notice. OVIHA then filed the instant action for unlawful detainer in federal district court. OVIHA claims it brought the

---

* Honorable Tom Stagg, Senior United States District Judge for the Western District of Lou-

isiana, sitting by designation.

action in federal court because "[t]he local state court refused to assume jurisdiction over this matter," and because none of the Tribes have established tribal courts capable of hearing eviction cases. In its complaint, OVIHA sought possession of the premises and payment of damages. Turner did not answer the complaint.

On February 6, 1996, the district court issued an Order to Show Cause why the case should not be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. OVIHA submitted its written response on February 22. Turner continued not to make any appearance before the district court. On April 17, 1996, the district court dismissed the case for lack of subject matter jurisdiction. This appeal followed.[1]

## II.

■ OVIHA contends that the district court has jurisdiction under 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[2] Specifically, OVIHA argues that this action arises under federal common law. We review the district court's dismissal for lack of subject matter jurisdiction de novo. *See Crist v. Leippe*, 138 F.3d 801, 803 (9th Cir.1998).

■ As a general matter, federal common law can provide subject matter jurisdiction under § 1331. *See Gila River Indian Community v. Henningson, Dur-*

*ham & Richardson*, 626 F.2d 708, 714 (9th Cir.1980) (citing *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972)). Under federal common law, all tribal Indian land is held in trust by the United States. *See Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 667–68, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (*Oneida I*); *Johnson v. M'Intosh*, 21 U.S.(8 Wheat.) 543, 587–91, 5 L.Ed. 681 (1823). Also under federal common law, Indians have an "'unquestioned right' . . . to the exclusive possession of their lands." *County of Oneida, New York v. Oneida Indian Nation of New York State*, 470 U.S. 226, 235, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (*Oneida II*) (quoting *Cherokee Nation v. Georgia*, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)). Thus, the Bishop Tribe has a federal right to possess the land constituting Bishop Reservation, including Unit 107.

■ Concomitant with the federal right to possess and occupy tribal land, "Indians have a federal common-law right to sue to enforce their aboriginal land rights." *Oneida II*, 470 U.S. at 235, 105 S.Ct. 1245. This includes a right to bring ejectment actions to remedy violations of the right of occupancy. *See id.; Marsh v. Brooks*, 8 How. 223, 232, 12 L.Ed. 1056 (1850) ("That an action of ejectment could be maintained on an Indian right to occupancy and use, is not open to question."). As an agency of the Bishop Tribe, OVIHA may assert this federal right of action where it is implicated.[3] The problem for OVIHA, however, is that this case does not

---

1. Turner filed nothing with this court in response to OVIHA's appeal. At oral argument, counsel for OVIHA informed the court that Turner had recently died. Because we hold that dismissal of this action is proper for lack of subject matter jurisdiction under 28 U.S.C. § 1331, we need not decide whether Turner's death also mandates dismissal on mootness grounds.

2. OVIHA also asserts jurisdiction under 28 U.S.C. § 1362, which provides:

   The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body

   duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

   OVIHA concedes, however, that the district court's jurisdiction under § 1362 is no more broad than its jurisdiction under § 1331. *See Gila River Indian Community v. Henningson, Durham & Richardson*, 626 F.2d 708, 710–15 (9th Cir.1980). Thus, our analysis of § 1331 is dispositive.

3. It is clear that OVIHA, while not itself a "tribe" under federal law, is a "tribal organization" or "tribal agency." *See United States v. Brame*, 657 F.2d 1090 (9th Cir.1981) (hold-

implicate the Bishop Tribe's federal right of possession. We take as our guide on this point the Supreme Court's decision in *Oneida I*. In *Oneida I*, the Oneida Indian Nation claimed that a 1795 cession of Indian land to the State of New York was invalid for lack of federal consent. *See* 414 U.S. at 664–65, 94 S.Ct. 772. Characterizing the claim as "essentially a possessory action," the Supreme Court found that "the right to possession itself is claimed to arise under federal law in the first instance." *Id.* at 676, 94 S.Ct. 772. That is, the complaint asserted the Oneida's federal common law right to occupy their land, and the case turned on whether that right of occupancy gave the Oneida a remedy against New York. Thus, the Court held that "[g]iven the nature and source of the possessory rights of Indian tribes to their aboriginal lands ..., it is plain that the complaint asserted a controversy arising under the Constitution, laws, or treaties of the United States." *Id.* at 667, 94 S.Ct. 772.

■■■ The *Oneida I* Court also emphasized, however, that "a controversy in respect of lands has never been regarded as presenting a Federal question merely because one of the parties to it has derived his title under an act of Congress." *Id.* at 676, 94 S.Ct. 772 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 570, 32 S.Ct. 704, 56 L.Ed. 1205 (1912)). One commentator sensibly reads this limitation to mean that "an ordinary action to recover possession of land does not 'arise under' federal law within the meaning of 28 U.S.C. § 1331 despite a potential federal issue regarding the chain of title." F. COHEN, HANDBOOK OF FEDERAL INDIAN LAW 312 (1982 ed.). Thus, federal jurisdiction attaches only when resolution of the case requires *interpretation* of a federal right of possession. *See Fort Mojave Tribe v. Lafollette*, 478 F.2d 1016, 1018 (9th Cir.

1973) (holding § 1331 jurisdiction attaches only if the complaint alleges a "substantial controversy between the parties regarding the interpretation or effect of federal law"); COHEN at n.354 ("the essential difference is ... whether a plaintiff seeks only property rights under state law, such as possession in ejectment, or seeks construction of a federal statute [or federal common law right] upon which other rights depend.").

■■ OVIHA contends that in seeking to evict Turner from Unit 107, it is asserting the Bishop Tribe's federal common law right to possess the property. Not so. OVIHA seeks possession of Unit 107 and payment of damages pursuant to its rights as Turner's sub-lessor. That is, OVIHA here asserts its rights as a landlord, not the Bishop Tribe's federal right of possession. To be sure, OVIHA's position as a sub-lessor does depend on its lease with the Bishop Tribe, and the Bishop Tribe's ability to lease land to OVIHA derives from its federal right of possession. But because adjudication of OVIHA's suit does not require an interpretation of that federal right, the suit does not arise under federal law. *See Oneida I*, 414 U.S. at 676, 94 S.Ct. 772; *Round Valley Housing Authority v. Hunter*, 907 F.Supp. 1343, 1348 (N.D.Cal.1995) ("Because landlord-tenant disputes are matters of state law, an action for eviction cannot be the basis for federal question jurisdiction."); *Minnesota Chippewa Tribal Hous. Corp. v. Reese*, 978 F.Supp. 1258, 1266 (D.Minn. 1997) ("Because the [housing authority's] right to the property at issue does not depend on Federal law, 'wholly apart from the application of state law principles which normally and separately protect a valid right of possession,' ... we find no basis upon which to invoke the Court's subject matter jurisdiction.") (quoting *Oneida I*, 414 U.S. at 677, 94 S.Ct. 772).[4]

---

ing that Indian housing authorities are "tribal organizations" for purpose of the federal statute on embezzlement); *Dubray v. Rosebud Hous. Auth.*, 565 F.Supp. 462, 465–66 (D.S.D. 1983) (defining the Rosebud Housing Authority as a "tribal agency"). Thus, OVIHA is

competent to assert the Tribes' federal common law interest in tribal land, where it is implicated.

**4.** We also find it instructive that both parties to the instant action are part of the Bishop

## III.

OVIHA maintains that the Bishop Tribe currently lacks tribal courts competent to hear this case, and that the state courts are statutorily precluded from hearing it. Thus, OVIHA contends that absent federal jurisdiction, it will be left without any forum in which to enforce its rights against tenants such as Turner. We agree that under 28 U.S.C. § 1360(b), state courts are barred from hearing this case because it involves "the ownership or right to possession of [real] property [belonging to an Indian tribe] or any interest therein." *See In re Humboldt Fir, Inc.,* 426 F.Supp. 292, 296 (N.D.Cal.1977), *aff'd* 625 F.2d 330 (9th Cir.1980) ("Where a dispute involves trust or restricted property, the state may not adjudicate the dispute nor may its laws apply."). In matters of Indian law, however, federal jurisdiction does not necessarily follow from the absence of state jurisdiction.

As a textual matter, § 1360(b)'s reference to actions involving the "ownership or right to possession of [tribal] property or any interest therein" sweeps more broadly than § 1331's reference to actions "arising under the ... laws ... of the United States." It is not at all anomalous that § 1360(b)'s preclusion of state jurisdiction would be greater than § 1331's grant of federal jurisdiction. Congress limits state jurisdiction over Indians in order to protect tribal sovereignty. Yet protecting tribal sovereignty does not require providing a federal forum whenever state jurisdiction is wanting. To the contrary, the Supreme Court has found that the interests of tribal self-government and self-determination are generally best served if

tribal courts preside over disputes involving Indians and arising on Indian land. *See Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 856, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) ("We believe that examination should be conducted in the first instance in the Tribal Court itself."). This case involves a dispute between members of the Bishop Tribe on land belonging to the Bishop Tribe. The interests of tribal sovereignty will be best served by the formation of tribal courts competent to hear such cases.

## IV.

For the foregoing reasons, we find that the district court properly dismissed the instant action for lack of subject matter jurisdiction.

AFFIRMED.

SILVERMAN, Circuit Judge, concurring:

Although the majority makes a persuasive argument that this case does not arise under federal common law for purposes of § 1331, the question is not open-and-shut. In fact, in 1987, our very able colleague, Judge A. Wallace Tashima, then a district judge, considered this issue and came to the contrary conclusion. *All Mission Indian Hous. Auth. v. Silvas,* 680 F.Supp. 330 (C.D.Cal.1987).

What *is* open-and-shut is that the case is moot. The tenant in this eviction action died during the pendency of the appeal. There is no longer anyone to evict. The case is not saved from mootness by the fact that OVIHA also pled a claim for back

Tribe. This case does not, therefore, involve a non-Indian's alleged trespass or other encumbrance on Indian land. *See Pueblo of Isleta v. Universal Constructors, Inc.,* 570 F.2d 300 (10th Cir.1978); *Mescalero Apache Tribe v. Burgett Floral Co.,* 503 F.2d 336 (10th Cir. 1974). In such cases, where a tribe seeks damages from a non-Indian "for trespass on the land, for restoration of the land to its original state or for irreparable injury to the land," *Gila River,* 626 F.2d at 715 n. 8, federal jurisdiction exists because the Indian right

of possession itself is at stake. Similarly in *Oneida I,* the Oneida's suit against New York "rest[ed] on the not insubstantial claim that federal law now protects, and has continuously protected from the time of the formation of the United States, possessory rights to tribal lands." 414 U.S. at 677, 94 S.Ct. 772. Here, however, the Bishop Tribe's possessory right to the land is not at stake. If the case were decided on the merits, vindication of the Tribe's rights would not depend on any particular outcome.

rent. No estate has been substituted for the decedent, nor is there any basis in the record to believe that an estate has been opened, will be opened, or even that the decedent had any survivors. Furthermore, no judgment was entered against the defendant; this case was dismissed at the default hearing stage. In any event, as of now, there is no defendant in this case.

Right or wrong, today's holding will have serious ramifications. Although OVIHA is required by Congress to establish "satisfactory procedures designed to assure the prompt payment and collection of rents and the prompt processing of evictions in the case of non-payment of rent[,]" 42 U.S.C. § 1437d(c)(4)(B), the majority's decision leaves OVIHA with absolutely no forum in which to fulfill that statutory obligation. And it does this in a litigation setting in which there has been no input from either the Bishop Tribe or the United States government.

This does not mean that the majority's conclusion is necessarily wrong. But it does suggest that the court should hesitate to reach out to decide a murky question of this magnitude—in a case that did not lend itself to the consideration of the views of other significantly affected parties—when an alternative jurisdictional basis is indisputably clear. Judicial restraint does not mean ducking hard questions. It means that generally speaking, "federal courts should exercise the least possible power adequate to the end proposed." *Stone v. City and County of San Francisco*, 968 F.2d 850, 861 (9th Cir.1992) (internal quotation marks and citations omitted).

I agree that this appeal must be dismissed, but on the ground that it has become moot. I would reserve for another day whether the complaint raised a federal question under § 1331.