**ROUND VALLEY INDIAN HOUSING AUTHORITY, Plaintiff,**

v.

**HUNTER, et al., Defendants.**

**No. C94–3847 WHO (JSB).**

United States District Court, N.D. California.

Oct. 24, 1995.

---

William Murray Hake and James V. Joyce, Hake & Joyce, San Francisco, CA, for plaintiff.

Lester J. Marston, Rapport & Marston, Ukiah, CA, for defendants.

## ORDER TO DISMISS ACTION FOR LACK OF SUBJECT MATTER JURISDICTION

BRENNAN, United States Magistrate Judge.

On September 15, 1995, the court heard and considered defendants' motion to dismiss and in the alternative for summary judgment in the above-entitled matter. Plaintiff appeared by its counsel James Joyce and William Hake, and defendants appeared by their counsel Lester Marston. The undersigned reviewed and considered the papers submitted and the arguments of counsel at the hearing.

Because of the federal courts' inconsistent application of federal common law to actions involving individual Indian tribe members, the undersigned *sua sponte* questioned jurisdiction over the present action. For the following reasons, the court orders this action dismissed for lack of subject matter jurisdiction.

## I. Facts

There are only two parties to this action, but three different entities are involved in the underlying events at issue: Round Valley Indian Housing Authority ("RVIHA"), Priscilla and Michael Hunter ("Hunters"), and Coyote Valley Band of Pomo Indians ("Coyote Valley Tribe"). The link between these three groups is as follows: Coyote Valley Tribe and RVIHA purportedly entered into a master lease ("Lease One") which granted the RVIHA permission to build and lease low-income housing on Coyote Valley Tribe trust land. RVIHA built low-income housing on the Coyote Valley Tribe's reservation and rented the units to members of the Coyote Valley Tribe. RVIHA then entered into a residential rental lease ("Lease Two") with the Hunters, who are members of the Coyote Valley Tribe. When the Hunters failed to pay rent, RVIHA filed this action to recover possession of the rental property and damages for rent due and owing.[1] Defendants assert, as an affirmative defense, that plaintiff does not have a legal interest in the property because Lease One is invalid for failure to conform to the requirements of 25 U.S.C. section 81.[2] If Lease One is invalid, defendants argue, Lease Two also must be invalid.

RVIHA is an organization approved by the United States Department of Housing and Urban Development ("HUD"). Both parties agree that the Coyote Valley Tribe is a federally recognized tribe which is governed by a General and Tribal Council.[3] Neither par-

---

1. If the Hunters are evicted, RVIHA will rent the vacant property to another member of the Coyote Valley Tribe.

2. 25 U.S.C. section 81 states in relevant part:
 No agreements shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States ... unless such contract or agreement be executed and approved as follows:

First. Such agreement shall be in writing, and a duplicate of it delivered to each party.
 Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.
 Third. It shall contain the names of all parties in interest ...
 Fourth. It shall state the time when and place where made.

3. The Coyote Valley Tribe approved its constitution under the Indian Reorganization Act, 25 U.S.C. section 476(a) which states in pertinent part:
 Any Indian tribe shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto, which shall become effective when, (1) ratified by a majority vote of

ty disputes that the Hunters took possession of the property and continue to reside there. The Hunters have never paid rent.

## II. Jurisdiction

Neither party has raised the issue of subject matter jurisdiction; rather, both rely on the district court's decision in *All Mission Indian Housing Authority v. Silvas,* 680 F.Supp. 330 (C.D.Cal.1987) which found federal question jurisdiction based on federal common law where an Indian housing authority sought to evict a tenant on Indian trust land. After analyzing the elements which render a case a matter of federal common law, and after reviewing the interests implicated in this action, the undersigned concludes that federal question jurisdiction does not exist here. Since there is no federal question jurisdiction, the action must be dismissed for lack of subject matter jurisdiction.[4]

### A. Federal Question Jurisdiction

Both parties claim that jurisdiction is appropriate under 28 U.S.C. section 1331, which provides:

> The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Neither party claims that the action arises under the Constitution or a treaty of the United States. Each party, however, states different reasons for finding jurisdiction under section 1331. Defendants claim that federal question jurisdiction is based on their affirmative defense, which derives from the provisions of 25 U.S.C. section 81. Plaintiff contends that federal jurisdiction exists here by virtue of federal common law.

the adult members of the tribe or tribes at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe; and (2) approved by the Secretary pursuant to subsection (d) of this section.

According to Coyote Valley Tribe's Constitution, the General Council consists of all tribal members over eighteen. (See Declaration of Renick, Exhibit C) The General Council then elects seven people from the General Council to serve as the Tribal Council for a specified period of time. (See Declaration of Renick, Exhibit C).

### 1. Section 81

▆ Federal jurisdiction must stem from an element pleaded in plaintiff's complaint. *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); *American Invs–Co Countryside v. Riverdale Bank,* 596 F.2d 211 (1979). Therefore the court must look at the well-pleaded complaint to determine whether it supports federal subject matter jurisdiction. *Countryside,* 596 F.2d at 216 ("[F]ederal question must appear in plaintiff's well-pleaded complaint in order to make the case arise under federal law."). A federal court does not have jurisdiction of a case arising under federal law "if the federal issue will be raised only as a defense to the state law claim." *Chuska Energy Co. v. Mobil Exploration & Producing,* 854 F.2d 727, 730 (5th Cir.1988).

▆ Since plaintiff did not plead section 81 in its complaint and defendants rely on section 81 solely as a defense, federal question jurisdiction cannot be based on section 81. *Chuska,* 854 F.2d at 730–731. Plaintiff seeks to evict defendants and obtain monetary damages for rent due and owing. Plaintiff's action is thus strictly a matter of state law. *Chuska* 854 F.2d at 729 (right to enforce a contract is rooted in state law). Since jurisdiction is limited to those claims pleaded in the complaint, there is no basis for federal question jurisdiction under federal statutory law.

### 2. Federal common law

Plaintiff contends that section 81 does not provide federal question jurisdiction. Instead plaintiff endorses *All Mission*'s theory that federal common law governs actions for

Under Coyote Valley Tribe's Constitution, it can create a tribal court system under which disputes can be adjudicated. The Coyote Valley Tribe did not create a tribal court system, and instead selected the United States District Court as its forum.

4. The undersigned disagrees with the Central District of California's decision in *All Mission,* and thus comes to a different conclusion as to the applicability of federal common law as a basis for federal question jurisdiction.

evictions on Indian trust land and accordingly concludes that the district court has subject matter jurisdiction. *All Mission,* 680 F.Supp at 332.

 It is well-established that federal common law can create federal subject matter jurisdiction. *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1390–91, 31 L.Ed.2d 712 (under section 1331 "laws" of the United States include federal common law); *Smith v. Grimm,* 534 F.2d 1346, 1351 (9th Cir.1976). Federal common law arises when there are "issues in which the federal interest is·so strong that they should be resolved on the basis of a uniform judge-made federal law, rather than on the basis of varying state laws." Wright, Miller & Cooper, *Federal Practice and Procedure Civil,* section 3563.

The court in *All Mission* concluded that federal common law governed where an Indian housing authority attempted to "evict Indian tenants off of unallotted Indian tribal lands." *All Mission,* 680 F.Supp. at 331. The *All Mission* court relied upon the theory that if a state court could not adjudicate the issue and there was no federal statute or treaty on point, then the federal district court must have federal common law jurisdiction. *Id.* at 332. To reach the conclusion that the state court could not adjudicate the claim, the court in *All Mission* relied on 28 U.S.C. section 1360(b). Section 1360(b) provides that nothing in section 1360 "shall confer jurisdiction upon the state to adjudicate the ownership or right to possession of such property [*i.e.,* property of any Indian tribe held in trust by the United States] or any interest therein." *Id.* (bracketed material in original).

In contrast, the Fifth Circuit reached a different conclusion in an analogous case. There the court addressed the issue of whether federal common law would govern

an action for breach of an oil and gas lease assignment between Chuska Energy and Mobil Exploration & Producing ("Mobil"). *Chuska,* 854 F.2d at 727. The lease site which was the subject of the assignment was an Indian reservation. *Id.* Plaintiff, Chuska Energy, had signed a lease agreement with the Navajos for the exclusive right to operate a tract of land within the Navajo reservation. *Id.* at 729. Shortly thereafter, Chuska Energy assigned Mobil a right to operate a portion of the land. *Id.* During the term of the assignment, Chuska Energy filed an action against Mobil for breach of contract.[5] In its answer, Mobil asserted the affirmative defense that the lease agreement between the Navajos and Chuska Energy was invalid because it did not conform to the requirements of the Mineral Leasing Act of 1938.[6] The *Chuska* court recognized that Mobil could assert the invalidity of the Navajo/Chuska lease as an affirmative defense but concluded that such defense would not create federal jurisdiction. *Id.* at 730–731. The court in *Chuska* held that the underlying claim— breach of contract—was rooted in state law and that therefore, there was no federal common law jurisdiction. *Id.* at 730.

The court reasoned that there was "no danger of erroneous or inconsistent construction each time a state court adjudicated those questions [which related to issues requiring the construction of federal statutes and the Constitution] in common law or state statutory actions." *Id.* The court further explained that a state court's "adjudication of Mobil's claims in a suit to enforce the assignment would not implicate or erode the congressional goal of monitoring the mining of Indian land." *Id.* at 731. The *Chuska* court, in dicta, stated that had the Navajos or the Secretary of Interior brought an action regarding the validity of the lease agreement between Chuska Energy and the Navajos,

---

5. The basis for the breach of contract claim was not explained since the court decided the case on jurisdictional grounds.

6. The Mineral Leasing Act provides:
 No ... lease ... from any Indian nation shall be of any validity unless made by treaty or convention. 25 U.S.C. section 177. All operators under any ... mineral lease issued

pursuant to the terms of [this Act] affecting restricted Indian lands shall be subject to the rules ... promulgated by the Secretary of the Interior. [Leases] issued under the provisions of [the Act] shall be subject to the terms of ... any plan approved ... by the Secretary.
25 U.S.C. section 396d.

then federal common law *would* provide the basis for federal question jurisdiction. *Id.* at 732.

*Chuska* is consistent with *Taylor v. Anderson,* 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914), where the Supreme Court concluded that an affirmative defense could not be the basis for federal subject matter jurisdiction. *Taylor,* 234 U.S. at 74, 34 S.Ct. at 724. The Court held that an action in ejectment did not arise under the laws of the United States. *Id.* In *Taylor,* plaintiffs alleged that they owned property which defendants then possessed.[7] Plaintiffs alleged that defendants had no legal right to possession of the property. In support of this allegation, plaintiffs contested the validity of defendants' deed to the land by claiming that it was "void under congressional legislation restricting the alienation of lands allotted to the Choctaw and Chickasaw Indians."[8] *Taylor,* 234 U.S. at 74, 34 S.Ct. at 724. The court concluded that the invalidity of defendants' deed was not an element of plaintiffs' cause of action; rather, plaintiffs had asserted the invalidity of the deed in anticipation of defendants' affirmative defense to the ejectment action. *Id.* at 74, 34 S.Ct. at 724. Since the validity of the lease was not an element of the complaint, the court found that the action was for ejectment only. *Id.* The court then concluded that an action for ejectment was a question for the state court, and "however essential or appropriate these [invalidity of underlying deed] allegations might have been in a bill in equity to cancel or annul the deed, they were neither essential nor appropriate in a petition in ejectment." *Id.* at 74, 34 S.Ct. at 724.

■ Here, the action is for eviction—a matter of landlord-tenant law. Landlord-and-tenant actions are state law issues. *Powers v. United States Postal Service,* 671 F.2d 1041, 1045 (7th Cir.1982) ("Federal common law of landlord and tenant does not exist."). The court in *Powers* noted:

> It is not to be expected that the federal courts would do a very good job of devising a model code of landlord-tenant law, since they have very little experience in landlord-tenant matters; and though eventually some body of law would emerge it would *not in all* likelihood be a uniform body, because there are twelve federal circuits and the Supreme Court could not be expected to intervene sporadically.

*Id.* at 1045. Because landlord-tenant disputes are matters of state law, an action for eviction cannot be the basis for federal question jurisdiction.

■ An action involving an Indian *tribe's*—as opposed to an individual tribe member's—possessory rights of trust land would, unquestionably, create a question of federal common law. 28 U.S.C. section 1360(b); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 677, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974) ("[T]he Oneidas assert[ed] a present right to possession based in part on their aboriginal right of occupancy which was not terminable except by act of the United States."). The *Oneida* court noted, in dicta, that the identities of the parties to an action is a significant factor in determining the federal interest. *Oneida,* 414 U.S. at 676, 94 S.Ct. at 781–82.[9] Since the determination of whether a federal interest exists controls the applicability of federal common law, the court in cases involving Indians should look to whether the party is an Indian tribe or an individual member of the tribe. *Id.* at 676, 94 S.Ct. at 781–82. The Court in *Oneida* stated:

> Insofar as the underlying right to possession is concerned, *Taylor* is more like those cases indicating that "a controversy in respect of lands has never been regarded as presenting a Federal question mere-

---

7. The opinion does not clearly state the identities of the parties, thus the parties will be referred in general terms as plaintiffs and defendants.

8. The court stated that there was an affirmative defense which questioned the validity of defendants' deed, however, it did not specify what federal statute the deed allegedly violated.

9. The Court in *Oneida* distinguished *Taylor v. Anderson* because *Taylor* involved plaintiffs who were individual Indians and not an Indian tribe, as in *Oneida. Oneida,* 414 U.S. at 676, 94 S.Ct. at 781.

ly because one of the parties to it has derived his title under an act of Congress." *Id.* at 660, 94 S.Ct. at 782 (quoting *Shulthis v. McDougal,* 225 U.S. 561, 570, 32 S.Ct. 704, 707, 56 L.Ed. 1205 (1912)).

■ As noted in *Oneida,* actions involving an Indian tribe as a party claiming a possessory right in land arising under federal law should be adjudicated by the federal courts. *Oneida,* 414 U.S. at 676, 94 S.Ct. at 781. In contrast, actions which involve individual members of tribes where the underlying action does not involve an Indian tribe's possessory rights should be adjudicated by the state courts. *Taylor,* 234 U.S. at 74, 34 S.Ct. at 724; *Chuska,* 854 F.2d at 730.

■ The present case differs from *Oneida* in that the Coyote Valley Tribe is not a party to the action, nor does the complaint claim a tribal possessory right based on the tribe's aboriginal right of occupancy. The present action is one for eviction by an Indian housing authority against two individual tribe members. This case is thus analogous to *Chuska;* it is suitable for adjudication by the state courts, yet there is an affirmative defense that raises issues of federal statutory law. The Hunters raised the affirmative defense that Lease One (and therefore, derivatively, Lease Two also) was invalid because it did not conform with section 81. Similarly in *Chuska,* defendants claimed, as an affirmative defense, that the lease agreement between Chuska Energy and the Navajos was invalid, and therefore the lease assignment between Chuska Energy and Mobil was also invalid. *Id.* at 730. The *Chuska* court concluded that an affirmative defense did not create federal subject matter jurisdiction. In the case at bar, as in *Chuska,* there is no danger of "erroneous or inconsistent construction" if the state court adjudicates the matter. *Chuska,* 854 at 727.

Although the possessory interests of two individual members of the Coyote Valley Tribe are at stake, Coyote Valley Tribe's possessory interests are not. In no way will adjudication of the eviction issue divest the Coyote Valley Tribe of any possessory interest in the trust land. Because the tribe's possessory interests are not implicated here, the federal interest in protecting Indian trust land is not affected. Based on the foregoing, state court is the proper place in which to adjudicate the present action.

Good cause appearing,

IT IS HEREBY ORDERED that this action is dismissed for lack of federal question jurisdiction.