**MINNESOTA CHIPPEWA TRIBAL HOUSING CORPORATION,**
Plaintiff,

v.

**Walter F. REESE and Linda Reese, Defendants.**

**No. CIV. 5–95–169(RLE).**

United States District Court,
D. Minnesota,
Fifth Division.

March 27, 1997.

Larry A. Kimball, Walker, MN, for plaintiff.

Defendants, pro se.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I.  *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 28 U.S.C. § 636(c)(3), upon the Motion of the Defendants to Dismiss, and upon the Court's request of the parties to brief the issue of this Court's subject matter jurisdiction.

The issues have been considered by the Court upon the parties' written submissions and, for these purposes, the Plaintiff Minnesota Chippewa Tribal Housing Corporation ("MCTHC") has appeared by Larry A. Kimball, Esq., and the Defendants have appeared *pro se.*

For reasons which follow, the Defendants' Motion is denied, and we dismiss this action, *sua sponte,* for lack of subject matter jurisdiction.

### II.  *Factual and Procedural Background*

By a lease dated February 24, 1977, the Defendants, who are members of the Leech Lake Band of Minnesota Chippewa Indians ("Leech Lake Band"), leased land held in trust by the United States government on behalf of the Leech Lake Band. *Memorandum in Support of Federal Subject Matter Jurisdiction,* at 1. The lease has a term of 25 years and was approved by the Minneapolis Area Director of the Bureau of Indian Affairs ("BIA"). See, *Title 25 U.S.C. § 415(a); Lease,* attached as *Exhibit B, Memorandum in Support of Federal Subject Matter Jurisdiction.* The express purpose of the lease was "to enable [the Defendants] to obtain a loan from [the MCTHC], under the Minnesota Housing Finance Agency Act (Section 16 of the 1976 Minnesota Session Laws, Chapter 254), to make improvements on the lease premises."[1]  *Id.* By that lease, the Leech

---

1.  Pursuant to Chapter 254, Section 16, Subdivi- sion 1(b) of the 1976 Minnesota Session Laws,

Lake Band further granted the Defendants permission to convey to the MCTHC "a real estate mortgage covering [the Defendants'] leasehold interest," and improvements "which may be constructed thereon." *Id.*

The MCTHC is a corporation that is engaged in the administration of State and Federal funds for the creation and maintenance of housing for low income residents at the Leech Lake, White Earth, Bois Forte, Fond du Lac, Mille Lacs and Grand Portage Reservations. The Board of Directors of the MCTHC consists of members of the respective tribal councils. On or about April 21, 1977, the Defendants executed and delivered a note and mortgage in favor of the MCTHC, in return for $32,154. *Note*, attached as *Exhibit A, Complaint*. The note specifies repayment in 360 monthly installments of $144.39.[2]

The Defendants are alleged to have failed to perform under the loan agreement, and the MCTHC commenced an action in Minnesota State Court to foreclose on the mortgage. On September 24, 1991, the Court entered judgment on behalf of the MCTHC and against the Defendants and, according to the MCTHC, awarded to it the amount of the unpaid loan, plus interest, and "all right, title and interest in and to the dwelling." *Memorandum in Support of Federal Subject Matter Jurisdiction*, at 2. In December of 1991, the MCTHC commenced an unlawful detainer action to physically remove the De-

fendants from the premises. Prior to a resolution of that action, however, the parties purportedly reached an "accord and satisfaction whereby Defendants would remit the sum of $4,267 for arrearages (sic) and enter into a rental agreement." *Complaint*. According to the MCTHC, the Defendants refused to execute the rental agreement, and made no further payments. *Id.*

In June of 1992, the MCTHC commenced a second unlawful detainer action in Minnesota State District Court. In response, the Defendants moved to dismiss for lack of subject matter jurisdiction. On October 9, 1992, the Court dismissed the unlawful detainer action with prejudice, and vacated "[t]hat portion of the judgment entered in the mortgage foreclosure action which purported to adjudicate the right to possession of the property in question." *Minnesota Chippewa Tribal Housing Corporation v. Reese*, Nos. CO–92–420 and C2–91–628 (Minn.Dis.Ct. October 9, 1992), attached to *Defendants' Motion to Dismiss*. Citing Title 28 U.S.C. § 1360(b), the Court concluded that it lacked jurisdiction "to adjudicate the right of ownership or possession of any interest in property held in trust by the United States for any Indian person or tribe."[3] *Id.*

In October of 1993, the MCTHC, rather than appealing the State District Court determination, commenced an unlawful detainer action in the Leech Lake Band of Chippewa Tribal Court. The MCTHC dismissed that

---

the State appropriated a sum of money to "be used in the development and operation of housing programs by the Minnesota Chippewa tribe." *Act of April 13, 1976, ch. 254, § 16*, codified at *Minnesota Statutes Section 462A.26*, repealed by *Laws 1977, ch. 401, § 24.*

**2.** Since the parties did not submit a copy of the mortgage for our review, it is not clear whether the property, which is subject to the mortgage, includes the Defendants' home as well as the leasehold, or merely the Defendants' home. In this respect, the MCTHC attached two unsigned financing statements to its Complaint. The first Statement, which is dated April 26, 1977, evidences a security interest in a "Dwelling," whereas the second Statement, which is dated May 23, 1977, evidences a security interest in both a "Dwelling" and in "Land owned by: United States Government in trust for the Minnesota Chippewa Tribe." *Financing Statements*, attached as *Exhibit B, Complaint*.

**3.** Enacted in 1953, Public Law 280 transferred to Minnesota and four other States, and offered to all others, civil and criminal jurisdiction over reservation Indians. Significantly, although the Act transferred civil jurisdiction, "to the same extent that such State has jurisdiction over other civil causes of action," it provided, in pertinent part:

Nothing in this section shall * * * confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of [real or personal property * * * belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to restriction against alienation] or any interest therein. *Title 28 U.S.C. § 1360(b); Act of August 15, 1953, ch. 505, § 4, 67 Stat. 588.* Public Law 280 is codified at *Title 18 U.S.C. § 1162, Title 25 U.S.C. §§ 1321–1326*, and *Title 28 U.S.C. § 1360.*

action, however, without prejudice, on December 23, 1993. According to the MCTHC, "it became evident that the Leech Lake Tribal Court had no procedural or substantive provisions that would allow an unlawful detainer action, or any other civil action other than prosecution of game and fish violations on the Reservation." *Memorandum in Support of Federal Subject Matter Jurisdiction,* at 3; *Notice of Dismissal,* attached to *Defendants' Motion to Dismiss.*

The MCTHC commenced this action on August 8, 1995. In its Complaint, the MCTHC "claims possession" of the property, on the ground that "[t]he Defendants have failed to perform under either the original loan agreement, or the subsequent accord and satisfaction agreement, and refuse to quit the premises." *Complaint.* For relief, the MCTHC demands "restitution of said premises," and the sum of $10,947. Presumably, the figure is derived from calculating 41 payments at $267, which, in the view of the MCTHC, is a reasonable rental value for the property.

■■■ On July 3, 1996, more than four months after the Dispositive Motion deadline, and in excess of two months after the case had been certified "Ready for Trial," the Defendants filed a Motion to Dismiss. Notwithstanding the express directive contained in the Pretrial Order, the Defendants did not request that we modify the Dispositive Motion deadline, nor did the Defendants provide any explanation for the substantial delay in the filing of their Motion. By Order dated October 15, 1996, we directed the Defendants to show cause, by no later than November 1, 1996, why this Court should consider those arguments, which do not relate to the subject matter jurisdiction of this Court, and which were belatedly raised in their Motion to Dis-

miss. On November 7, 1996, the Defendants informally moved for an extension of time in which to reply to our October 15 Order and, on November 22, 1996, we granted the Defendants until December 15, 1996, within which to file their responses. To date, we have not received a response from the Defendants, let alone a showing of good cause that the dispositive motion deadline could not have been met "despite the diligence of the party seeking the extension." See, *Advisory Committee Notes, 1993 Amendment to Rule 16.* Accordingly, the Defendants' Motion to Dismiss is denied.[4]

Additionally, in view of our uncertainty as to our jurisdiction to hear this action, we instructed, *sua sponte,* the parties to brief the issue of our subject matter jurisdiction. The parties have submitted supplemental briefing and, as a consequence, the jurisdictional issue is now ripe for determination.

### III. *Discussion*

■■ A. *Standard of Review.* As a Federal Court, we have limited jurisdiction and may only hear matters which fall within our jurisdictional limits. *Marine Equipment Management Co. v. U.S.,* 4 F.3d 643, 646 (8th Cir.1993) ("Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.") As a consequence, we have a primordial duty, in every case before us, to inquire whether the vital prerequisite of subject matter jurisdiction has been satisfied. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992); *Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Woodke v. Dahm,* 873 F.Supp. 179, 185 (N.D.Iowa 1995), aff'd, 70 F.3d 983 (8th Cir.1995). Because subject matter jurisdiction is a threshold con-

---

4. Even if the Defendants had shown good cause to modify this Court's Scheduling Order, we conclude that their Motion, which is premised upon the doctrines of abstention and Federal Court deference to State Court decisions, is without merit. With respect to the requested deference, we note that the Minnesota District Court did not address the scope of this Court's subject matter jurisdiction, when it ruled that, as a State Court, it lacked jurisdiction under Title 28 U.S.C. § 1360(b). Furthermore, as the Supreme Court has recently observed, "[t]he doctrine of absten-

tion, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Given our conclusion that the MCTHC has failed to invoke this Court's subject matter jurisdiction, the doctrine of abstention has no application.

sideration, the Court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir.1993), quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990), cert. denied, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994); see also, *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir.1993) ("Lack of subject matter jurisdiction * * * cannot be waived[;][it] may be raised at any time by a party to an action, or by the court *sua sponte,*"); *Redman v. F.A.A.*, 759 F.Supp. 1384, 1387 (D.Minn. 1991); *Rule 12(h)(3), Federal Rules of Civil Procedure.*

■ Under Title 28 U.S.C. § 1331, a Federal District Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "It is well settled that this statutory grant of 'jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.'" *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 850, 105 S.Ct. 2447, 2450–2451, 85 L.Ed.2d 818 (1985), quoting *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *Boyster v. Roden*, 628 F.2d 1121, 1122 (8th Cir.1980); *Vizenor v. Babbitt*, 927 F.Supp. 1193, 1199 n. 3 (D.Minn.1996). Although a plaintiff need not base his claim on a Federal statute or a constitutional provision, he must "assert a claim 'arising under' federal law." *National Farmers Union Ins. Cos. v. Crow Tribe*, supra 471 U.S. at 850, 105 S.Ct. at 2451. As the Supreme Court has succinctly explained, "a suit arises under the law that creates the cause of action." *Id.* at 850–51, 105 S.Ct. at 2451, quoting *American Well Works Co. v. Layne and Bowler Co.*, 241 U.S. 257, 260, 36

S.Ct. 585, 586, 60 L.Ed. 987 (1916). Otherwise stated, "[a] district court's federal-question jurisdiction * * * extends over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,' * * * in that 'federal law is a necessary element of one of the well-pleaded * * * claims.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811 (1988), quoting *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983).

■ B. *Legal Analysis.* The MCTHC has predicated our subject matter jurisdiction on Federal common law. Although the MCTHC has failed to include, within the four corners of its Complaint, a statement of the grounds upon which our jurisdiction depends, as is required by Rule 8(a)(1), Federal Rules of Civil Procedure, on October 30, 1995, the MCTHC filed a document, which it labeled "Submission of Information Following the Pre–Trial Notice & Order," in which it cited *All Mission Indian Housing Authority v. Silvas*, 680 F.Supp. 330 (C.D.Cal.1987), as authority for our exercise of subject matter jurisdiction. While the factual circumstances in *Silvas* are generally analogous, we decline to apply its holding to the present case and, further, we conclude that this action should be dismissed for want of Federal subject matter jurisdiction.

■ In *Silvas*, as here, an Indian Housing Authority commenced an action in Federal Court to evict a member of an Indian tribe from land held in trust by the United States for the benefit of the tribe.[5] Finding the

---

5. Unlike the present case, however, the housing authority leased the land from the tribe and, in turn, it subleased individual homesites to eligible Indian families. As we have explained, here the Defendants, rather than the MCTHC, leased the land from the tribe. Accordingly, the relationship between the Defendants and the MCTHC is that of mortgagor-mortgagee, and not that of landlord-tenant. Under the common law doctrine of mortgagee in possession, a mortgagee may acquire possession of property, which secures an indebtedness, upon default of the mortgagor, and may retain possession of the premises

until the mortgagor redeems the property or until the property is foreclosed. See, G. Nelson & D. Whitman, *Real Estate Finance Law* § 4.24 (2d ed.1985). However, in those States, including Minnesota, where the mortgagee has a lien on the property, rather than title, "the mortgagor retains his rights to possession and to rents and profits during default and after the foreclosure sale during the redemption period." *Mutual Benefit Life Ins. v. Frantz Klodt & Son*, 306 Minn. 244, 247, 237 N.W.2d 350, 353 (1975). For purposes of determining our jurisdiction, howev-

dispute to have arisen under Federal common law, the Court concluded that it had subject matter jurisdiction under Title 28 U.S.C. § 1331. *Id.* at 332. The Court premised its jurisdictional finding on the ground that, under its interpretation of Title 28 U.S.C. § 1360(b), "state courts cannot adjudicate this dispute." *Id.* In the Court's view, since the State Courts did not offer a forum in which to adjudicate the plaintiff's claim, and since there was no Federal statute or treaty on point, the Federal Court must have Federal common law jurisdiction. *Id.*

We disagree with the reasoning of the Court in *Silvas,* for we are not persuaded that the absence of an alternative forum is sufficient to invoke the jurisdiction of our Court. In this respect, we are guided, if not controlled, by our Circuit's holding in *Schantz v. White Lightning,* 502 F.2d 67, 69 (8th Cir.1974). There the Court considered a motor vehicle collision between non–Indian plaintiffs and an Indian defendant, which occurred within an Indian reservation. There, as here, the plaintiffs originally commenced an action in State Court, which was subsequently dismissed, pursuant to Public Law 280, for lack of subject matter jurisdiction. *Id.* at 68. Likewise, as is asserted here, the Tribal Court was without jurisdiction to adjudicate the matter. *Id.* at 69. As the Court observed, "[t]he legal anomaly is therefore obvious—the [plaintiffs] are left without a forum in which to pursue their claim." *Id.* at

70. Notwithstanding this "anomaly," the Court rejected the plaintiffs' contention—which is identical to that which has been raised here—that a Federal Court should invoke Federal question jurisdiction when a plaintiff would otherwise be left without a remedy. But see, *Richardson v. Malone,* 762 F.Supp. 1463, 1469 (N.D.Okla.1990) (expressly rejecting the holding in *Schantz,* the court found Federal common law jurisdiction in the absence of an alternative forum and, as a result, exercised jurisdiction over a foreclosure action, where the secured property was physically located in Indian country). ·

More recently, our Court of Appeals, in *Northwest S.D. Production Credit Ass'n v. Smith,* 784 F.2d 323, 326 n. 4 (8th Cir.1986), rejected an assertion that the absence of an "alternate forum * * * support[ed] the existence of federal jurisdiction." *Id.* Characterizing this argument as "a bid for default jurisdiction," the Court concluded that such a contention "confuses the issues and does not respond to the real question—whether the complaint states a federal claim[;]" and thus, "[i]f no federal claim is stated, the federal forum cannot grant relief." *Id.*[6]; cf., *Weeks Constr., Inc. v. Oglala Sioux Housing Auth.,* 797 F.2d 668, 672 n. 4 (8th Cir.1986) (despite finding that it lacked Federal subject matter jurisdiction, the Court "express[ed] no opinion on [the] issue [of State Court jurisdiction]").

---

er, whether the MCTHC seeks possession of the property as a landlord, or as a mortgagee, is of no moment.

**6.** In *Northwest S.D. Production Credit Ass'n v. Smith,* 784 F.2d 323 (8th Cir.1986), a mortgagee sought the foreclosure and sale of mortgaged land that was located within Indian country. In *Smith,* the plaintiff premised its right to foreclose "directly on 25 U.S.C. § 483a," which provides that an allotment may be mortgaged by its individual Indian owner, and which further provides that mortgaged land is subject to foreclosure under State law. *Id.* at 325. By statute, allottees are deemed vested with an unrestricted fee simple title for purposes of foreclosure. *Title 25 U.S.C. § 483a.* Notwithstanding that the case involved a mortgage foreclosure, "[b]ecause [plaintiff's] complaint alleged the right to foreclose a mortgage on trust land pursuant to 25 U.S.C. § 483a, and because that asserted federal claim is not wholly insubstantial and frivolous," the Court found that the District Court had jurisdiction to determine whether the plaintiff stated

a cause of action upon which relief could be granted. Nevertheless, the Court concluded that Section 483a did not create a Federal cause of action, and dismissed the action.

In contrast to the mortgagee in *Smith,* nowhere has MCTHC asserted "[a] non-frivolous claim of a right or remedy under a federal statute," which, under the Court's reasoning, "is sufficient to invoke federal question jurisdiction." *Id.,* citing *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* 457 U.S. 15, 21 n. 6, 102 S.Ct. 2202, 2206 n. 6, 72 L.Ed.2d 639 (1982). Nor could MCTHC have asserted such a right, for there is no corresponding statute which governs the execution of mortgages on land, as is involved here, that is not allotted to individual Indians, but is held in trust for the benefit of the tribe. Here, rather than assert a claim to possession under Federal law, the MCTHC claims possession of the premises pursuant to the terms of a loan agreement.

We are governed by the reasoning in *Schantz v. White Lightning* and in *Northwest S.D. Production Credit Ass'n v. Smith.* Accordingly, we are compelled to conclude that the lack of an alternative forum is insufficient to invoke this Court's subject matter jurisdiction. In so ruling, we are mindful of MCTHC's concern that it may be left without a remedy. Nevertheless, we are aware of no impediments, and the Plaintiff draws none to our attention, that would preclude the Leech Lake Tribe from imbuing its Tribal Courts with the necessary jurisdiction and procedures to resolve unlawful detainer actions that are brought by a Tribal agency against a member of the Tribe.

Further, by its express terms, Public Law 280 only excludes, from State Court adjudication, those properties that are held in trust by the United States or are subject to government restraints on alienation. Thus, by any interpretation of Section 1360(b), the MCTHC is neither precluded from commencing an action for personal judgment in State Court, or from enforcing security interests in unrestricted property in State Court. Lastly, while we take no position on the issue, we note that the law concerning State Court jurisdiction over trust property, especially within those States—including Minnesota—where Public Law 280 applies, is unclear. See, e.g., *Round Valley Indian Housing Authority v. Hunter,* 907 F.Supp. 1343, 1347 (N.D.Cal.1995) (notwithstanding Section 1360(b), "actions involving individual members of tribes, where the underlying action does not involve an Indian tribe's possessory rights, should be adjudicated by the state courts"); *Jicarilla Apache Tribe v. Bd. of Cty. Commissioners, Rio Arriba,* 118 N.M.

550, 883 P.2d 136 (N.M.1994) (reasoning that Section 1360(b) merely operates to ensure that Section 1360(a) would not reconfer jurisdiction where existing Federal statutes or case law had withheld State Court jurisdiction, Court held that State Court had jurisdiction to adjudicate land held by tribe in fee simple).

Having concluded that the absence of an available forum is insufficient to invoke Federal question jurisdiction, we turn to the observation, by the Court in *All Mission Indian Housing Authority v. Silvas,* supra at 332, that "an action asserting a right to possession of Indian lands arises under federal law." *Id.,* citing *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 682, 94 S.Ct. 772, 784, 39 L.Ed.2d 73 (1974). In our view, the Court's reliance on the *Oneida* decision is misplaced, for our reading of that decision supports a different result.

In *Oneida,* the Supreme Court found Federal question jurisdiction over a land dispute between the Oneida Indians and the State of New York. The Oneidas alleged aboriginal ownership of a vast area of land which had been ceded to the State of New York in 1795.[7] The Court viewed the Complaint as "assert[ing] a current right to possession conferred by federal law, wholly independent of state law," and concluded as follows:

Given the nature and source of the possessory rights of Indian tribes to their aboriginal lands, particularly when confirmed by treaty, it is plain that the complaint asserted a controversy arising under the Constitution, laws, or treaties of the United

---

7. In *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), the Supreme Court discussed, at length, the nature and source of aboriginal title. Relying on *Johnson v. M'Intosh,* 8 Wheat. 543, 5 L.Ed. 681 (1823), the Supreme Court noted that Indian title can be "extinguished only by or with the consent of the general government." *Oneida Indian Nation v. County of Oneida,* supra 414 U.S. at 669, 94 S.Ct. at 778. In *Johnson,* the Court had found that the European sovereigns held "ultimate dominion" in the land "subject only to the Indian right of occupancy," *id.* at 574, which is generally referred to as " 'original Indian title.' 'aboriginal Indian title,' or sometimes merely

'Indian title.' " F. Cohen, *Handbook of Federal Indian Law* at 487 (1982 Ed.). Indians, in the Court's view, "were admitted to be the rightful occupants of the soil, with a legal as well as well as just claim to retain possession of it." *Johnson v. M'Intosh,* supra at 574. Thus, only the United States could extinguish the tribal right of occupancy, and the tribes were incapable of conveying their aboriginal land directly to non-Indians, even before the passage of the first Nonintercourse Act, ch. 33, 1 Stat. 137 (1790), which provided that Congress could not acquire lands from Indians except by treaty entered pursuant to the United States Constitution.

States within the meaning of [Title 28 U.S.C. § 1331].

*Id.* at 667, 94 S.Ct. at 777.

As later reconfirmed by the Court in *Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979), "[i]t is rudimentary that 'Indian title is a matter of federal law and can be extinguished only with federal consent' and that the termination of the protection that federal law, treaties and statutes extend to Indian occupancy is 'exclusively the province of federal law.'" *Id.* at 670–671, 99 S.Ct. at 2539, quoting *Oneida Indian Nation v. County of Oneida,* supra 414 U.S. at 670, 94 S.Ct. at 779.[8]

In so ruling, the *Oneida* Court distinguished other suits for possession where the plaintiff had asserted title under a Federal statute, patent, or treaty. *Id.* at 676, 94 S.Ct. at 781–782. As but one example, in *Taylor v. Anderson,* 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914), the plaintiffs, who were individual Indians, claimed a right to possession in lands that had been allocated to individual Indians. The plaintiffs alleged that certain defendants were in possession of such land in violation of Federal legislation "restricting the alienation of lands allotted to the Choctaw and Chickasaw Indians." *Id.* at 75, 34 S.Ct. at 724. The Court concluded

that the invalidity of the defendants' deed was not an essential element of the plaintiffs' action for ejectment, but that the plaintiffs had asserted the invalidity of the deed in anticipation of the defendants' affirmative defense to the ejectment action. *Id.* at 74, 34 S.Ct. at 724. In distinguishing *Taylor,* the *Oneida* Court explained that "[h]ere, the right to possession itself is claimed to arise under federal law in the first instance." *Oneida Indian Nation v. County of Oneida,* supra, 414 U.S. at 676, 94 S.Ct. at 782. The Court further noted that the plaintiffs, in *Taylor,* "were individual Indians, not an Indian tribe,"[9] and that, "[i]nsofar as the underlying right to possession is concerned, *Taylor* is more like those cases indicating that 'a controversy in respect of lands has never been regarded as presenting a Federal question merely because one of the parties to it has derived his title under an act of Congress.'" *Id.,* quoting *Shulthis v. McDougal,* 225 U.S. 561, 570, 32 S.Ct. 704, 707, 56 L.Ed. 1205 (1912); *13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d* § 3566 at 88 (1984) ("An action to enjoin another from using land that, by federal law, is asserted to be plaintiff's raises a proper federal question, but if plaintiff is out of possession, he has an adequate legal remedy

---

**8.** In a subsequent decision, the Court reaffirmed that the Oneida Indians retained a Federal common law right to sue on their claim, and that the right was not barred by limitations or laches. *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 236, 105 S.Ct. 1245, 1252, 84 L.Ed.2d 169 (1985).

**9.** On analogous facts to those present in *All Mission Indian Housing Authority v. Silvas,* 680 F.Supp. 330 (C.D.Cal.1987), the Court, in *Round Valley Indian Housing Authority v. Hunter,* 907 F.Supp. 1343, 1347 (N.D.Cal.1995), rejected the reasoning in *Silvas,* and dismissed an action, for want of jurisdiction, that had been brought by an Indian Housing Authority in order to evict a tenant from Indian trust land. There, the Court focused on the Supreme Court's observation, in *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 676, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974), that the plaintiffs in *Taylor v. Anderson,* 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) were individual Indians and not an Indian tribe. In the view of the *Round Valley* Court, "in determining the applicability of federal common law, the court in cases involving Indians should look

to whether the party is an Indian tribe or an individual member of the tribe." *Id.* at 1348. Since the case involved the possessory interests of two individual members of the tribe, the *Round Valley* Court concluded that the possessory interests of the tribe were not implicated, and thus, "the federal interest in protecting Indian trust land is not affected." *Id.* at 1349. While we agree with both the result in *Round Valley,* as well as the Court's observation that, ordinarily, the Federal interest is lessened when the possessory rights of individual Indians, rather than the entire tribe, are involved, we believe that the issue is more properly analyzed by determining whether the asserted right to possession involves a question of Federal law. See, *Franchise Tax Bd. v. Laborers Vacation Trust,* 463 U.S. 1, 23 n. 25, 103 S.Ct. 2841, 2853 n. 25, 77 L.Ed.2d 420 (1983) (contrasting *Oneida* and *Taylor,* the Supreme Court explained that "an ejectment suit based on Indian title is within the original federal question jurisdiction of the district courts, because Indian title creates a federal possessory right to tribal lands, 'wholly apart from the application of state law principles which normally and separately protect a valid right or possession'").

in an action for ejectment, in which allegations as to the title of land are not proper, and he cannot invoke federal question jurisdiction.").

In contrast to the circumstances at play in *Oneida*, this case does not involve a federally protected right of an Indian tribe to the possession of tribal land. Whereas "the Oneidas assert[ed] a present right to possession based in part on their aboriginal right of occupancy which was not terminable except by act of the United States," *Oneida Indian Nation v. County of Oneida*, supra 414 U.S. at 677, 94 S.Ct. at 782, the rights which MCTHC seeks to enforce are based upon the original loan agreement, the interpretation of which is governed by State, not Federal, law.[10] Unlike the Oneida Indians, there is no similar assertion by the MCTHC that the nature and source of its right to possession is dependent upon Federal law. Because the MCTHC's right to the property at issue does not depend upon Federal law, "wholly apart from the application of state law principles which normally and separately protect a valid right of possession," *id.* at 677, we find no basis upon which to invoke the Court's subject matter jurisdiction.[11]

Although the case did not involve a right to possess tribal property, the conclusion we reach is also consistent with our Court of Appeals' analysis in *Weeks Constr., Inc. v. Oglala Sioux Housing Auth.*, supra at 672. In *Weeks*, the United States, through the

Department of Housing and Urban Development, provided funds for the construction of housing units by a Tribal Housing Authority. A contractor sued the Housing Authority for breach of contract and asserted Federal question jurisdiction. In rejecting that assertion, the Court held that the contractor's claims were based upon its construction contract with the Housing Authority, the "interpretation of which was governed by local, not federal, law." *Id.* at 672. In the words of the Court, "[b]ecause [the plaintiff's] breach of contract claim does not require interpretation of the validity, construction, or effect of federal law, no subject matter jurisdiction over the Housing Authority based on a federal question exists here." *Id.*; see also, *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 999 F.2d 503, 507 (11th Cir.1993) (finding Federal question jurisdiction lacking where plaintiff asserted jurisdiction under Section 1331 but "present[ed] facts establishing a breach of contract claim"). Likewise, the MCTHC's claim for the possession of the premises does not require the interpretation 'of the validity, construction, or effect of federal law,' and thus, is insufficient to invoke this Court's subject matter jurisdiction.

■ Moreover, while we are mindful that, by Federal regulation, the Secretary of the BIA was required to approve the loan agreement at issue, see, *25 C.F.R. § 162.12(c)*, it is settled law that the mere "connection with activities undertaken as part of functions au-

---

**10.** In addition, the Court observed that the Oneida Indians' claim to possession was "also asserted to arise from treaties guaranteeing their possessory right," and " 'it is to these treaties [that] we must look to ascertain the nature of these [Indian] rights, and the extent of them.' " *Oneida Indian Nation v. County of Oneida*, supra 414 U.S. at 678, 94 S.Ct. at 782, quoting *The New York Indians*, 5 Wall. 761, 768, 18 L.Ed. 708 (1866). Furthermore, the Court determined that the Oneida Indians asserted a claim under the Nonintercourse Acts, which hold that the extinguishment of Indian title requires the consent of the United States. Here, the MCTHC has neither based its right to possession on a Treaty, nor has it premised its claim on a Federal Statute.

**11.** A more recent example of the Supreme Court's exercise of Federal common law jurisdiction to resolve a dispute involving Indian law is *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818

(1985). There, a non–Indian brought an action in Federal Court to enjoin Tribal Court proceedings in which the non–Indian was the defendant. In finding that the action "arose under" Federal common law, within the meaning of Section 1331, the Court noted that "[t]he question whether an Indian tribe retains the power to compel a non–Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law." Since the plaintiffs in the Federal Court action asserted that Federal law had divested the Tribe of jurisdiction, "it is federal law on which they rely as a basis" for their claim, and thus, in the Court's view, they had filed an action "arising under" Federal law. In contradistinction to *National Farmers*, while the MCTHC seeks to invoke this Court's jurisdiction under Federal common law, it does not contend that Federal law "afford[s][it] the basis for the relief [it] seek[s] in a federal forum." *Id.* 471 U.S. at 852, 105 S.Ct. at 2452.

thorized by federal law" is insufficient to invoke Federal question jurisdiction. *Weeks Constr., Inc. v. Oglala Sioux Housing Auth.,* supra at 675 n. 8. In *Weeks,* our Court of Appeals rejected the contention that jurisdiction had been invoked because the agreement had been authorized by Federal law. The Court observed: "[The contractor's] action for money damages may have a connection with activities undertaken as part of functions authorized by federal law, but did not itself arise under federal law and requires only the interpretation and application of contract principles under local law." *Id.* at 675 n. 8; see also, *Niagara Mohawk Pow. v. Tonawanda Band of Seneca Ind.,* 94 F.3d 747, 753 (2d Cir.1996) (rejecting proposition "that statutory requirements governing federal approval of certain contracts between Indians and non–Indians give rise to a federal common law governing such contracts"); *Morongo Band of Mission Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1385–86 (9th Cir.1988) (in an action for breach of lease, the fact that the lease was entered into under authority conferred by Federal statute did not support Federal question jurisdiction), cert. denied, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989); *13B Charles Alan Wright, Arthur Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d* § 3562 at 36 (1984) ("a suit on an agreement between private parties does not raise a federal question merely because the agreement was authorized by federal law or some federal agency has approved the agreement").

As we have expressed throughout the course of this Opinion, in order for jurisdiction to attach under Section 1331, the matter in controversy must itself arise under the Constitution, laws, or treaties of the United States. Here, the matter in controversy is an alleged breach of a loan agreement, and therefore, the matter does not "arise under" Federal law. "Although the federal government has long had a special relation to the American Indian, there is no jurisdiction in the federal courts to hear a case merely because an Indian * * * is a party to it." *Superior Oil Co. v. Merritt,* 619 F.Supp. 526, 529 (D.Utah 1985), quoting *13B Charles Alan Wright, Arthur R. Miller &*

*Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d* § 3579 at 255 (1984). Significantly, this case presents no issue regarding the rights of the Leech Lake Band in its relationship with the Federal government, nor has the MCTHC demonstrated a need for nationally uniform rules to govern the transaction at issue. Lastly, as we have explained, the mere absence of an alternative forum is insufficient to invoke the jurisdiction of this Court. Accordingly, there is no Federal common law basis for finding that the dispute in this action meets the "arising under" requirement of Section 1331.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendants' Motion to Dismiss [Docket No. 9] is DENIED.

2. That this action be dismissed for want of Federal subject matter jurisdiction.